Michael COHEN, Appellant,

v.

Russell K. NORRIS et al., Appellees.

No. 17141.

United States Court of Appeals Ninth Circuit.

Jan. 30, 1962.

A. L. Wirin, and Fred Okrand, Los Angeles, Cal., for appellant.

Roger Arnebergh, City Atty., William B. Burge, Deputy City Atty., Los Angeles, Cal., for appellees.

Before CHAMBERS, BARNES, HAMLEY, HAMLIN, JERTBERG, MERRILL, KOELSCH, BROWNING and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Invoking a provision of the Civil Rights Act, 42 U.S.C.A. § 1983, Michael Cohen brought this damage suit against five police officers of the city of Los Angeles.[1] Alleging that on several occasions he was subjected to an unreasonable search and seizure, plaintiff sought damages in the sum of $10,000 from each of the defendants. The named defendants are Russell K. Norris, Roger W. Otis, James P. Lang, John James and Edward E. Farqueson.

Responsive to a motion filed by defendants, the district court dismissed the action on the ground that the complaint failed to state a claim upon which relief could be granted. Cohen appealed.

Cohen alleges in his complaint that in January, 1960 the defendants, while acting under color of their authority as police officers, corruptly, wantonly and unlawfully conspired knowingly to deprive plaintiff of rights, privileges and immunities secured to him by the Constitution of the United States. He further alleged that, acting pursuant to that conspiracy and under color of their authority as police officers, the defendants committed one or more of four described overt acts, all taking place in late January or early February, 1960.

Each of these overt acts, it was alleged, was committed unlawfully, intentionally, maliciously and oppressively, with the knowledge on the part of the defendants that they were exceeding their authority as police officers. It was further alleged that each of these acts was committed with the knowledge on the part of the defendants that they were depriving plaintiff of his constitutional rights.

According to the complaint, each of the four overt acts took place in a public place in the city of Los Angeles, the first three on Sunset Boulevard and the fourth in a restaurant on Sunset Boulevard. The first such incident involved only defendants Norris and Lang. It was alleged that they seized and imprisoned plaintiff and without having a search warrant searched him and his automobile. It was alleged that plaintiff, although seized and searched, was not arrested, nor did Norris or Lang have a warrant for plaintiff's arrest or probable cause to arrest or imprison him. It was alleged that Norris and Lang filed no complaint or charge against plaintiff and did not bring him before a magistrate.

It was further alleged with reference to this incident that Norris and Lang conducted the search and seizure in the presence of others in order to humiliate plaintiff, and that he was humiliated. Additionally, it was alleged, while Norris was searching plaintiff he intentionally and in order to injure plaintiff struck him in his private parts.

The second overt act was alleged to involve James and Lang. As described in the complaint, the incident was generally the same as that described above except that the search was limited to plaintiff's person and the similar physical injury was alleged to have been inflicted by James. The same allegations were made concerning the lack of warrants

---

1. 42 U.S.C.A. § 1983 reads as follows:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
   If a claim was stated under 42 U.S.C.A. § 1983 the district court had jurisdiction under 28 U.S.C.A. §§ 1331(a) and 1343 (3). See Monroe v. Pape, 365 U.S. 167, 169, 81 S.Ct. 473, 5 L.Ed.2d 492.

and probable cause and failure to file a charge or bring plaintiff before a magistrate. It was not alleged, however, as in the case of the first overt act, that plaintiff "was not arrested."

The third and fourth overt acts were alleged to involve Farqueson and Otis. With respect to neither of these incidents was physical violence or a purpose to humiliate or actual humiliation alleged. It was alleged in connection with the fourth overt act, but not the third, that the search and seizure was conducted in the presence of others. The search alleged with respect to the third incident involved both the person of plaintiff and his automobile. The search alleged with regard to the fourth incident, however, was limited to plaintiff's person.

It was not alleged concerning either the third or fourth overt act that plaintiff "was not arrested." Concerning the third incident there were the same allegations concerning the lack of warrants and probable cause and failure to file a charge or bring plaintiff before a magistrate as were made with regard to the first overt act. Concerning the fourth overt act, however, it was not alleged that Farqueson and Otis did not have a search warrant or a warrant for plaintiff's arrest, nor was it alleged that these defendants did not have probable cause to arrest or imprison plaintiff. Likewise, there was no allegation to the effect that Farqueson and Otis had not filed a charge against plaintiff or brought him before a magistrate.

The district court held that the complaint failed to state a claim upon which relief could be granted under 42 U.S.C.A. § 1983 because " * * * there are no allegations that the purpose of the acts complained of was to discriminate between persons or classes of persons." In support of its view that such allegations were necessary in order to state a claim under § 1983, the court cited Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88

L.Ed. 497; Hoffman v. Halden, 9 Cir., 268 F.2d 280; Walker v. Bank of America, 9 Cir., 268 F.2d 16; and Agnew v. City of Compton, 9 Cir., 239 F.2d 226.

Appellant argues that the cited cases do not stand for the stated proposition, and that assuming they do, the law is now otherwise in view of the more recent decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, decided February 20, 1961.

■ In Snowden the ruling that there must be present an element of intentional or purposeful discrimination in order to state a claim under §§ 1983 or 1985(3) (then 8 U.S.C.A. §§ 43, 47(3)) was made with reference to the equal protection clause of the Fourteenth Amendment. See Snowden v. Hughes, supra, 321 U.S. at 7–10, 64 S.Ct. at 400–402. The constitutional right invoked by Cohen in the instant case is the due process clause of that amendment. He claims that he was subjected to an unreasonable search and seizure. The guarantee against unreasonable searches and seizures contained in the Fourth Amendment has been made applicable to the states by reason of the due process clause of the Fourteenth Amendment. Monroe v. Pape, supra, 365 U.S. at 171, 81 S.Ct. at 476.

It is true that appellant has alleged a conspiracy, which is not an essential allegation under 42 U.S.C.A. § 1983, but is an essential allegation under 42 U.S.C.A. § 1985(3), part of which is quoted in the margin.[2] It is likewise true that an essential ingredient of a claim under § 1985(3) is that a defendant have a purpose of depriving another of the equal protection of the laws or of equal privileges and immunities under the laws.

■ But it is permissible to state a civil cause of action for conspiracy, based on § 1983. Hoffman v. Halden, supra, 268 F.2d at 293. Hence the fact that conspiracy is here alleged does not mean that the plaintiff is invoking § 1985(3).

**2.** 42 U.S.C.A. § 1985(3) reads in part:

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * *."

Cohen's complaint makes no reference to § 1985 and, as before noted, the substance of his claim involves the due process clause, which is not embraced within § 1985(3).

We conclude that Snowden v. Hughes affords no support for the view that to state a claim under the due process clause, one must allege that the purpose of the acts complained of was to discriminate between persons or classes of persons.

In Agnew v. City of Compton, supra, 239 F.2d at 231, this court held that a complaint in which an unlawful arrest was alleged did not state a claim under § 1983 "absent allegations that the purpose of the arrest was to discriminate between persons or classes of persons."

This holding in Agnew was made with specific reference to an alleged unlawful arrest, whereas the basic allegation in the instant case is unreasonable search and seizure. An asserted unlawful search and seizure was involved in Agnew, however, and the quoted holding must have been intended to apply thereto, else the judgment of dismissal could not have been affirmed.[3]

In Walker v. Bank of America National Trust & Savings Ass'n, 9 Cir., 268 F.2d 16, 24–25, we stated, citing the Agnew case, that in order to state a cause of action under § 1983 " * * * it is necessary to allege facts showing that the purpose of the defendants in committing the acts complained of was to discriminate between persons or classes of persons." While Walker did not involve an alleged unreasonable search and seizure, the quoted language was ap-

parently intended to apply to any claim which might be brought under § 1983. This statement, however, was not necessary to the decision in Walker since it had already been held (at p. 24) that the complaint contained no sufficient allegation that the act was committed under color of state law. Such an allegation is necessary to state a claim under § 1983.

In Hoffman v. Halden, supra, 268 F.2d at 290, it was stated that in complaints invoking §§ 1983 and 1985 " * * * it must be alleged and proved that the purpose of the acts complained of was to discriminate between persons or classes of persons." The Agnew case and a concurring opinion in Cobb v. City of Malden, 1 Cir., 202 F.2d 701, 707 were cited in support of this holding. While Hoffman was not concerned with an asserted unreasonable search and seizure, the ruling announced was broad enough to include such a claim.

It follows from what has been said above that the rule stated in Agnew and Hoffman in disposing of those appeals, and in Walker by way of dictum, supports the ruling of the district court in the instant case, that an allegation of purpose to discriminate is essential to the statement of a claim under § 1983.

But, as before noted, appellant contends that if such a rule was announced in these cases it has now been superseded by the rule stated in the more recent decision of the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

Monroe was a Civil Rights Acts damage suit brought under 42 U.S.C.A. § 1983 against the city of Chicago and thir-

---

3. The Fourth Amendment guarantees the right of the individual to be secure against unreasonable arrests as well as against unreasonable searches and seizures. Worthington v. United States, 6 Cir., 166 F.2d 557, 562; United States ex rel. Potts v. Rabb, 3 Cir., 141 F.2d 45. Likewise, the provision of the Fourth Amendment forbidding the issuance of warrants except upon probable cause applies to warrants of arrest as well as search warrants. Albrecht v. United States, 273 U.S. 1, 5, 47 S.Ct. 250, 71 L. Ed. 505; Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556, 559. But we are not called upon to decide whether, as assumed in Agnew, the provisions of the Fourth Amendment forbidding unreasonable arrests and prohibiting issuance of warrants of arrest except on probable cause have been made applicable to the states by reason of the due process clause of the Fourteenth Amendment.

teen Chicago police officers by several persons who alleged an unlawful search and seizure.[4] As to one of the plaintiffs it was also alleged that he was taken to a police station, subjected to lengthy interrogation concerning a two-day-old murder without being permitted to call his family or attorney, and ultimately released without being taken before a magistrate or having charges preferred against him.

Holding that it was error to dismiss the action in so far as the police officers were concerned, the Supreme Court made this statement (at p. 187, 81 S.Ct. at p. 484) concerning the necessity for an allegation of a specific intent:

"In the Screws case [Screws v. United States, 325 U.S. 91 (65 S.Ct. 1031, 89 L.Ed. 1495)] we dealt with a statute that imposed criminal penalties for acts 'wilfully' done. We construed that word in its setting to mean the doing of an act with 'a specific intent to deprive a person of a federal right.' 325 U.S., at 103 [65 S.Ct., at 1036]. We do not think that gloss should be placed on § 1979 which we have here. The word 'wilfully' does not appear in § 1979 [R.S. § 1979, 42 U.S.C.A. § 1983]. Moreover, § 1979 provides a civil remedy, while in the Screws case we dealt with a criminal law challenged on the ground of vagueness. Section 1979 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

In Hardwick v. Hurley, 7 Cir., 289 F.2d 529, the court, seeing "no alternative" in view of Monroe v. Pape, reversed a judgment dismissing a civil rights action invoking § 1983 and involving alleged police brutality. The court expressed the view that the last sentence of the above-quoted statement from Monroe was susceptible of a broad reading which might even preclude the assertion of any defenses in a § 1983 case, and expressed doubt that the court intended to go to that extent. Whether because of these misgivings we do not know, the court in Hardwick in reversing noted that the complaint alleged the purpose of the brutality was to punish plaintiff because of his refusal to incriminate himself by taking a "drunkometer" test.

We do not understand Hardwick to stand for the proposition that the quoted statement from Monroe concerning intent is so broad that it is to be disregarded entirely and that an allegation of a specific intent to deprive the plaintiff of a constitutional right may therefore still be insisted upon. If this is what Hardwick means, we would have to respectfully disagree. The seeming breadth of a pronouncement of the Supreme Court does not appeal to us as a good reason for giving the pronouncement no effect.

Moreover, in our view the quoted language from Monroe is not susceptible of the broad reading which held misgivings for the court in Hardwick. The court in Monroe was dealing with the necessity of alleging a specific intent to encroach upon federal rights. The allegations being dealt with were those which *must* be stated in a complaint, not those which *might* be stated in an answer. The statement in Monroe that "Section 1979 [42 U.S.C.A. § 1983] should be read against the background of tort liability * * *." suggests that there may well be defenses, such as self defense and unforseeability due to defects in a warrant, or by reason of other circumstances.

In our view Monroe v. Pape announces the rule that an allegation of a purpose to discriminate or a purpose to deprive one of any federal right, is not essential to the statement of a claim under § 1983 predicated on an alleged violation of the due process clause of the Fourteenth Amendment. It is accordingly necessary for us to overrule in this respect the contrary holdings in our earlier decisions in Agnew v. City of Compton

---

4. It was alleged that the police officers broke into plaintiff's home in the early morning, made them stand naked in the living room, and ransacked every room, emptying drawers and ripping mattress covers.

**30**

and Hoffman v. Halden, and to disapprove the contrary statement made by way of dictum in Walker v. Bank of America.

■ For the reasons indicated, this action should not have been dismissed on the ground that Cohen failed to allege in his complaint that appellees committed the acts in question with the purpose of discriminating between persons or classes of persons, or with the purpose of depriving appellant of any other constitutional right.

But appellees advance two additional reasons, not adopted by the district court, why it should be held that the right result was reached. The first of these is that under the allegations of the complaint Cohen made no showing that his constitutional rights had been infringed.

In order to state a claim under 42 U.S.C.A. § 1983, facts must be alleged which show that the defendant: (1) while acting under color of any statute, ordinance, regulation, custom or usage of any State or Territory; (2) subjects, or causes to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

■ Appellees do not question the sufficiency of the complaint with respect to the first of these two elements. It would be unavailing if they did, since it is therein specifically alleged that appellees were officers of the police department of the city of Los Angeles and were acting "under color of authority of such police officers," when the acts complained of were committed. As recently decided in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492, conduct is engaged in under color of state law if the actor was clothed with the authority of the state

and was purporting to act thereunder, whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law.

Appellees, however, question the sufficiency of the complaint with respect to the second of the two indicated elements of a claim under 42 U.S.C.A. § 1983. They appear to concede that the complaint alleges what appellees characterize as "basic common-law torts", namely: "(1) false arrest and imprisonment; (2) illegal search of plaintiff's person and automobile; and (3) assault and battery." (Appellees' brief, p. 10) But they contend that neither these nor any other factual allegations in the complaint show that appellant has been deprived of a constitutional right protected by the due process clause of the Fourteenth Amendment.

Appellees argue that in order for an illegal search and seizure to constitute a deprivation of constitutional rights cognizable under the Civil Rights Acts, there must be allegations showing that appellant was the victim of such violence or brutality as would "offend a sense of justice," or "shock the conscience." [5] In appellees' view, the complaint before us is lacking in such allegations, although they concede that "reprehensible" conduct is alleged.[6] Appellees rely mainly upon Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Irvine v. People of State of California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, and Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, as authority for their contention that, absent allegations of conduct which would shock the conscience or offend a sense of justice, a claim based on an alleged illegal search and seizure is not stated under 42 U.S.C.A. § 1983.

---

5. The quoted phrases which appellees thus adopt to state their position were used, respectively, in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674, and Rochin v. People of State of California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183, and thereafter repeated or paraphrased in other Supreme Court decisions.

6. Referring in their brief to the allegations of the complaint, appellees state that "(t)here is totally lacking violence or brutality." Appellees are mistaken as to this as physical assaults were alleged with regard to the first two overt acts.

Appellees' reliance upon Wolf, Irvine and Breithaupt is misplaced. In each of those cases it was *assumed* by the court that the alleged illegal conduct violated constitutional rights. The question being considered was whether a state conviction should be reversed because evidence had been obtained in violation of constitutional rights, and thereafter used to convict the defendant. Wolf, while holding that the proscriptions of the Fourth Amendment were applicable to the states by virtue of the due process clause of the Fourteenth Amendment, refused to require the exclusion of evidence obtained in violation of such rights.

But in Rochin v. People of State of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, the court without even mentioning Wolf, held that if the violation of constitutional rights was so extreme as to "shock the conscience," the evidence was inadmissible because due process in the state criminal proceeding was then infringed. Irvine and Breithaupt thus found it necessary to discuss the degree of the constitutional deprivation in order to determine whether to apply the Wolf or the Rochin rule. In none of the above-cited cases is it intimated or suggested that some particular level of violence or barbarism in connection with a search and seizure is necessary in order to constitute a violation of the due process clause of the Fourteenth Amendment.[7]

■■■■ The security of one's privacy against arbitrary intrusion by the police is "at the core of the Fourth Amendment

* * *." Wolf v. People of State of Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782. An intrusion by the police in the form of a search and seizure is arbitrary, and therefore "unreasonable," if not authorized by law. The only intrusions by the police which are authorized are those: (1) which are made under a valid search warrant, incident to a valid arrest, or under exceptional circumstances which dispense with the need of a search warrant (Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487); and (2) where the actual purpose of the officers in making the search is to ascertain whether articles which the officers have a right to seize are on the person or premises being searched. See Abel v. United States, 362 U.S. 217, 225–228, 80 S.Ct. 683, 4 L.Ed.2d 668.

■■■ With these principles in mind we turn to an examination of the complaint to determine whether there are factual allegations, sufficient to withstand a motion to dismiss the action, that appellant was subjected to a search and seizure which was "unreasonable" within the contemplation of the Fourth Amendment. The allegations necessary to state such a claim, as in the case of any other civil action in the federal courts, are not to be held insufficient unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Gruen Watch Co. v. Artists Alliance, 9 Cir., 191 F.2d 700.[8]

---

7. The Wolf rule was overturned in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, so that now evidence discovered in any search which violates constitutional rights is inadmissible in a state prosecution regardless of whether the search and seizure is of a kind which "shocks the conscience."

8. In the comparatively recent case of Rennie & Laughlin, Inc. v. Chrysler Corporation, 9 Cir., 242 F.2d 208, 212–213, we cited and quoted from the Gruen case with approval, and then went on to say:

"Nor is a motion to dismiss the only effective procedural implement for the

expeditious handling of legal controversies. Pretrial conference; the discovery procedures; and motions for a more definite statement, judgment on the pleadings and summary judgment, all provide useful tools for the sifting of allegations and the determination of the legal sufficiency of an asserted claim. The salvaged minutes that may accrue from circumventing these procedures can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of an action. That is one of the reasons why a motion to dismiss is viewed with disfavor in the federal courts. Another is the basic precept that the primary objective of the law is to obtain a

With regard to the first overt act, it is alleged, among other things, that pursuant to a conspiracy between all of the appellees, two of them: (1) without arresting appellant, and without having a search warrant, searched him; (2) that the search was conducted in the presence of others in order to humiliate the plaintiff and did so humiliate him; and (3) that one of these two appellees, while searching appellant, "and in order to injure" him, struck him in the groin.

Since it is alleged, with respect to this first overt act, that appellees did not have a search warrant, it follows that the search was unreasonable, unless it was made incident to a valid arrest, or was made under exceptional circumstances which dispense with the need of a search warrant.[9] Appellant specifically alleged that he was not arrested, thereby asserting, in effect, that the search was not made incident to a valid arrest.

Appellant did not expressly allege that there were no exceptional circumstances which would dispense with the need of a search warrant, and it is not contended that the complaint is deficient for that reason. Such an argument would be unavailing, and we hold that the complaint was not deficient in that respect. The burden of pleading and proving exceptional circumstances which would authorize a search, without a search warrant and not incident to a valid arrest, should be upon those who conducted the search, as a matter of defense. They are in a better position than is the person searched, to know whether exceptional circumstances were relied upon as providing authority for the search and, if so, what those circumstances may have been. It is therefore fitting that they carry the affirmative burden as to this, and that a plaintiff not be required to plead and prove the negative of the proposition.

We conclude that, as to the first overt act, the described allegations that appellees searched appellant without arresting him and without having a search warrant sufficiently allege an unreasonable search to withstand a motion to dismiss.

It is also our opinion that the further allegations pertaining to the first overt act, concerning the assault, with intent to injure, committed during the course of the search, and the conducting of the search in a manner intended to humiliate appellant, such intent being fulfilled, are individually sufficient to establish the unreasonableness of that search, as against a motion to dismiss. As stated above, the only legitimate purpose of a search is to ascertain whether articles which the officers have a right to seize are on the person or premises being searched. Any search is unauthorized and so becomes unreasonable in the constitutional sense when it goes beyond that purpose.

Where, in the exercise of their discretion, officers believe that a reasonable exercise of force, or a conducting of the search in a public place, is necessary to effectuate the legitimate purpose of the search, the fact that an assault results or humiliation is suffered does not render the search unreasonable. But here it is

---

determination of the merits of any claim; and that a case should be tried on the proofs rather than the pleadings. DeLoach v. Crowley's, Inc., 5 Cir., 128 F.2d 378, 380. This is not to say or imply that a motion to dismiss should never be granted. It is obvious that there are cases which justify and indeed compel the granting of such motion. The line between the totally unmeritorious claims and the others cannot be drawn by scientific instruments but must be carved out case by case by the sound judgment of trial judges. That judgment should be exercised cautiously on such a motion." (Footnotes omitted.)

9. Whether the officers had probable cause for the issuance of a search warrant (as distinguished from probable cause to make an arrest) would have relevance only if it also appears that special circumstances existed which would dispense with the necessity of obtaining a warrant. In the absence of special circumstances of this kind a search not incident to a lawful arrest must rest on a search warrant, probable cause to obtain such a warrant being insufficient. Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828; Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436.

alleged that appellees had unlawful purposes in exercising force and in conducting a public search. Whether appellant can prove that such purposes existed, or what if any damages may have been sustained, are matters which are not now before us. We only hold that the allegation is sufficient to give him an opportunity to prove it.

While we have found the allegations concerning the first overt act sufficient as against the motion to dismiss, we wish to make it clear that we do not put our imprimatur upon the complaint in other respects. It may well be that, before being called upon to answer, appellees are entitled to an order requiring that the allegations concerning this and other overt acts be recast to amplify the factual setting of the incident, and to eliminate surplusage and possible inconsistencies.

Appellees have not yet asked the district court to enter such an order, and appellant has not yet been ordered to amend in any of these respects. If and when he is ordered to amend, and does so, appellant may also wish to reconsider his allegations concerning the existence of a conspiracy.[10]

■■■ Everything which we have said concerning the first overt act is also true regarding the second. As to the| third overt act, a claim is stated only with regard to the lack of authority to make the search, there being no allegations as to an assault or humiliation. The allegations concerning the fourth overt act do not state a claim on any theory. Facts are not alleged showing that the search was unauthorized. There are no allegations as to an assault. While there is a faint implication that a purpose to humiliate might have been involved, we do not regard it as sufficient.

We hold that with respect to the first, second and third overt acts, but not with regard to the fourth, the complaint sufficiently states claims under 42 U.S.C.A. § 1983 to withstand the motion to dismiss.

■■■ The final reason advanced by appellees why it should be held that the action was properly dismissed is that the acts in question were performed by them as police officers in the exercise of a discretionary function as to which they have immunity from liability under the Civil Rights Acts. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, and Hoffman v. Halden, supra, 268 F.2d 280 are especially relied upon in presenting this argument.

Tenney involved legislative immunity long recognized as a general principle of the common law. Hoffman involved state health officers and the superintendent of a state mental hospital. In the latter case immunity was accorded on the theory that the acts complained of were done in the performance of discretionary functions. If the language used in so ruling may be considered to be broad enough to include the acts of police officers in making searches and seizures, it must be regarded as not controlling in view of Monroe v. Pape.

■■■ Monroe v. Pape involved police officers and, while the opinion of the court does not specifically discuss immunity, the result reached necessarily implies rejection of such a defense as a general proposition. As appellees concede, they would not have been immune from liability had an action been brought against them in the courts of California for false arrest and imprisonment. See Miller v. Glass, 44 Cal.2d 359, 282 P.2d 501. But, in any event, no local rule of immunity unassociated with a generally recognized common-law immunity can stand as a defense in a Civil Rights Acts case. As Justice Frankfurter said in his dissent in

---

10. During oral argument counsel for appellant wavered on the question of whether the allegation of conspiracy should be considered as surplusage inasmuch as it was not a required allegation under § 1983. If upon the remand of this case appellant determines to reframe the pleadings to eliminate the allegation of conspiracy, then the complaint may be subject to motions directed against misjoinder of defendants. See Rule 20(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Monroe v. Pape (365 U.S. at p. 211, 81 S.Ct. at p. 496), agreeing to that extent with the result reached by the majority:

"* * * If, for example, petitioners had sought damages in the state courts of Illinois and if those courts had refused redress on the ground that the official character of the respondents clothed them with civil immunity, we would be faced with the sort of situation to which the language in the Wolf opinion was addressed: 'we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment.' 338 U.S. at 28 [69 S.Ct. at 1361] * * *."

▪ ▌ Appellees contend that plaintiff has a complete remedy in the state courts since police officers are not immune from suits for assault and battery. As stated in Monroe v. Pape, 365 U.S. at p. 183, 81 S.Ct. at p. 482, "* * * It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. * * *"

The court in Hardwick v. Hurley, 7 Cir., 289 F.2d 529, at 530 expressed the view that a broad interpretation of the Supreme Court's decision in Monroe v. Pape "may well open the flood gates and bring into the federal trial courts thousands of assault and battery cases that should never be there." We have endeavored to give that Supreme Court decision neither a "broad" nor a "narrow" interpretation, but only that which is compelled by the language used. That decision provided an authoritative pronouncement of what Congress intended when it enacted 42 U.S.C.A. § 1983. If giving effect to this Congressional intent will "open the flood gates," the remedy is not for this court or any court to give § 1983 a narrower construction than Congress intended, but for Congress to decide whether it wishes to narrow the scope of the statute.

The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.