**Joseph MOSS, Plaintiff-Appellant,**

**v.**

**Albert H. HORNIG, Defendant-Appellee.**

**No. 111, Docket 27688.**

United States Court of Appeals
Second Circuit.

Argued Nov. 13, 1962.

Decided Jan. 18, 1963.

George J. Malinsky, Georgetown, Conn., for plaintiff-appellant.

Louis Weinstein, Asst. Atty. Gen., Hartford, Conn. (Albert L. Coles, Atty. Gen., Hartford Conn., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

Joseph Moss, whose prosecution for violation of the Connecticut Sunday Closing Law, Conn.Gen.Stat. § 53–300, is pending in the Connecticut courts, seeks a federal injunction against that prosecution on three grounds: (1) The Connecticut statute is unconstitutional on its face in that it constitutes an unreasonable discrimination and it is a law respecting establishment of a religion; (2) The statute is unconstitutional because it is unequally enforced; and (3) The state prosecuting attorney is, under color of law, depriving plaintiff of the constitutional right to equal protection. As to (1) and (2), plaintiff requested a three-judge statutory court which the district judge denied on the ground that plaintiff's constitutional claim was frivolous, citing McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Braunfield v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); Gallagher v. Crown Kosher Super Mkt., 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961). As to (3), the court below held that plaintiff had not proved purposeful discrimination and entered summary judgment for the defendant. We affirm.

Moss operates a shoe store on Route 7 in Brookfield, Connecticut. He keeps the store open on Sundays and realizes one-third of his $276,000 annual gross receipts from sales on that day. On February 23, 1962, Hornig, as prosecuting attorney for the third judicial circuit in Connecticut,[1] filed an information against Moss for violation of the state Sunday Closing Law.[2] On March 30, the date when the complaint in the instant action was filed, trial was set for April 2.[3]

Federal courts of equity have always been loathe to restrain criminal prosecutions by states, even on constitutional grounds, where all constitutional issues can be decided in the first instance as a matter of course by the state courts. Douglas v. Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). The policy against enjoining the state proceeding is especially compelling in cases such as the instant one because it is probable that plaintiff presented no serious constitutional question which had not been decided by the Supreme Court, see Bush v. Orleans Parish School Board, 138 F.Supp. 336, 337 (E.D.La. 1956), leave to file petition for writ of mandamus denied, 351 U.S. 948, 76 S.Ct. 854, 100 L.Ed. 1472 (1956). Under these circumstances, we hold that the district court did not err in denying the request for a three-judge court under 28 U.S.C. § 2281.

However, we think the trial court was correct in reaching the merits of the claim predicated upon the Civil Rights Act, 42 U.S.C. § 1983, and in holding a hearing thereon before entering summary judgment for defendant. If we were reasonably certain that Moss would be allowed to assert "discriminatory enforcement" as a defense to the proceeding against him and that his claim regarding unconstitutionality would be decided upon review of his conviction, we would hold that Douglas v. Jeanette, supra, governs the 42 U.S.C. § 1983 action. But it has been held, see People v. Montgomery, 117 P.2d 437 (Calif.Ct.App. 1941), that "discriminatory enforcement" is not available as a defense in a criminal proceeding. It is therefore incumbent upon the federal courts, where sufficiently specific allegations are made, to make a preliminary inquiry such as was made here.

We do not find any case in which an injunction against a state prosecutor has been sought under 42 U.S.C. § 1983. Since Moss claims, in his complaint, that Hornig's "arbitrary and discriminatory enforcement of the [Sunday Closing Law] * * * against [him] * * * by arrest and prosecution is in violation of plaintiff's right to the equal protection of the laws," we must determine, first, whether the statute under which he brings his action encompasses the equal protection clause of the Fourteenth Amendment, and secondly, whether Moss has proved a denial of equal protection.

Section 1983 of 42 U.S.C. states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

1. There are 18 such circuits in Connecticut.

2. From January 1, 1961 until the time this action was tried, there had been three other prosecutions in the Third Judicial Circuit of Connecticut under the Connecticut statute. One of the previous prosecutions was against the plaintiff Moss. In that case, Moss' demurrer to the information was sustained. The other two actions were against Paul Presente. They were dismissed.

3. The district court entered a temporary restraining order on March 30, to run until April 9. This was extended until April 19. When it expired, however, the defendant herein agreed not to proceed with the prosecution until a decision is rendered in this case.

equity, or other proper proceeding for redress."

Although it has occasionally been held, in other circuits, that the equal protection clause is not encompassed by 42 U.S.C. § 1983, see Bottone v. Lindsley, 170 F.2d 705 (10 Cir., 1948), cert. denied, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949); Ortega v. Ragen, 216 F.2d 561 (7 Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955),[4] these courts reached their conclusion by reading 42 U.S.C. § 1983 in conjunction with the civil rights conspiracy statute, 42 U.S.C. § 1985(3), which refers to "equal protection of the laws, or of equal privileges and immunities under the laws." The latter statute is much more detailed than the former, and necessarily so, since it addresses itself, to private rather than state action, see Collins v. Hardyman, 341 U.S. 651, 661, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); cf. Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

Taking 42 U.S.C. § 1983 by itself, there seems to be no reason to limit the scope of the "any rights, privileges, or immunities" clause to that of the "privileges or immunities of citizens" clause of the Fourteenth Amendment. The immunity from denial by the state of the equal protection of the laws is one secured by the Constitution of the United States. This view is supported by the language of Mr. Justice Stone in his separate opinion in Hague v. C. I. O., 307 U.S. 496, 526, 59 S.Ct. 954, 969, 83 L.Ed. 1423 (1939):

> "[42 U.S.C. § 1983] thus includes the Fourteenth Amendment and such privileges and immunities as are secured by the due process and equal protection clauses, as well as by the privileges and immunities clause of that Amendment."

Further, in Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), the court considered (and rejected) a claim of denial of equal protection under both 42 U.S.C. §§ 1983 and 1985(3).[5] Although there is no square holding in Snowden that § 1983 encompasses the equal protection clause, we are persuaded that failure to dispose of the case on that narrow ground indicates that the Court accepted the view which Mr. Justice Stone expressed in Hague v. C. I. O., supra. See Snowden v. Hughes, 321 U.S. at 6–7, 64 S.Ct. 397, at 400, where Chief Justice Stone said that "three distinct provisions of the Fourteenth Amendment guarantee rights of persons and property," echoing the "rights * * * secured" language of § 1983.

We turn now to the question of whether plaintiff proved or offered to prove a denial by the prosecution of equal protection of the law.

■■ Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. See United States v. Rickenbacker, 309 F.2d 462 (2 Cir. 1962). To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397 (1944).

In Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), the Supreme Court rejecting petitioner's contention that the selective enforcement of the West Virginia habitual offenders penalty statute was a denial of his right to equal protection said:

> "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a find-

---

4. The Ninth Circuit reached the opposite result. See Agnew v. City of Compton, 239 F.2d 226 (9 Cir., 1956); Hoffman v. Halden, 268 F.2d 280 (9 Cir., 1959).

5. Then 8 U.S.C. §§ 43, 47(3).

ing of a denial of equal protection were not alleged."

The Oyler case seems to indicate that the relief for denial to equal protection is limited to cases where class discrimination is proved. Compare Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942). See the Supreme Court, 1961 Term, 76 Harv.L.Rev. 54, 120–121 (1962). But in Oyler, there was no allegation by petitioner of purposeful discrimination against him as an individual. It was merely argued, from statistics, that severer penalties were sought in a minority of the multiple offender cases. This, it was contended, denied equal protection to those persons against whom the heavier penalty was enforced, 368 U.S. at 456, 82 S.Ct. at 505.

▆▆ In the instant case, Moss alleged an intentional or purposeful discrimination against him as an individual. We are not convinced that the Oyler case precludes our granting relief if a plaintiff can show that a state official purposefully discriminated against him. However, Moss has made no such showing. He evoked testimony that only two persons, including himself, had been prosecuted in the Third Circuit since 1961,[6] that Hornig knew other stores were open, and that Hornig failed to bring other prosecutions. These facts do not prove purposeful discrimination.

Plaintiff argues that he was prepared to prove purposeful discrimination and that the rulings of Judge Blumenfeld on objections to testimony he sought to elicit prevented his doing so. He contends further that those rulings were error.

▆ Rule 43(c) of the Federal Rules of Civil Procedure provides that if an objection to a question is sustained, the attorney may make a specific offer of what he expects to prove by the answer of the witness.[7] Such an offer is not mandatory. But where the significance of the evidence sought to be introduced is not obvious, an appellate court cannot be expected to hold exclusion to require reversal on the possibility that the exclusion was harmful error. See Hoffman v. Palmer, 120 F.2d 976, 994 (2 Cir., 1942), aff'd on other grounds, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463 (2 Cir.) (Marshall, J., concurring); 5 Moore, Federal Practice ¶ 43.11, at 1351 (1951). The questions to which objections were sustained dealt with the knowledge of various witnesses that other stores were opened, or with the activities of the Chamber of Commerce toward enforcement of the law. The relevance to the issue of purposeful discrimination of possible answers to such questions is not apparent and the requirement of a complete record for review may not be waived.

It is likely that proof that others have violated the law and have not been prosecuted could be offered with respect to almost every lesser offense proscribed by the laws of Connecticut or of any other state. If such facts alone were sufficient to make out a case under the Civil Rights Act almost every state prosecution would be subject to interference on the claim of discrimination and the offer of such proof. Clearly the Civil Rights Act was not intended to provide such a means for

---

6. The division of the state into circuits has existed since a January 1, 1961 reorganization. The testimony indicates that from July 1951 to July 1955, there were no prosecutions in the Danbury City Court—the predecessor of the Third Circuit—for violation of the Sunday Closing Law. Further, the clerk of the Third Circuit Court testified that she examined the books for about five years prior to the reorganization and found no prosecutions under that statute. It is not unlikely, therefore, that the four prosecutions described in note 2, supra, were the only ones in the area from July 1951.

7. Plaintiff's counsel asked numerous questions to which defendant interposed objection. These objections were sustained. The transcript indicates only "(Objection sustained)" or "(Argument of counsel)" and does not include the grounds stated for said objections, or any colloquy among counsel and court on these matters.

frustrating the administration of criminal justice by state authorities. To avoid a proliferation of suits to enjoin state prosecutors, cf. Note, 66 Harv.L. Rev. 1285, 1293–1295 (1953), we think that the relevance of questions asked to proof on the issue of purposeful discrimination should be clear and unmistakable.

We hold that Moss has failed to prove purposeful discrimination which is required in order to establish a denial of equal protection, and that he did not make any offer of proof relevant to that issue.

He has therefore established no denial of equal protection under 42 U.S.C. § 1983.

Affirmed.