Davis LEE, Appellant,

v.

Dr. J. B. HODGES, Superintendent of School District No. 5, et al., Appellees.

No. 8813.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 24, 1963.

Decided June 29, 1963.

Davis Lee, pro se.

Jack F. McIntosh, Anderson, S. C. (Sherard & McIntosh, Anderson, S. C., on the brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.

SOBELOFF, Chief Judge.

Appearing pro se and asserting jurisdiction in the United States District Court for the Western District of South Carolina under 28 U.S.C.A. §§ 1331 and 1343, Davis Lee, a Negro who publishes "a weekly Negro newspaper" in Anderson, South Carolina, instituted this action against certain school officials. He alleged what he believes to be claims arising under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Rev. Stat. §§ 1977–1980(3), 42 U.S.C.A. §§ 1981–1983, 1985(3). The defendants include the members of the School Board of School District Number 5 in Anderson; Dr. J. B. Hodges, Superintendent of School District Number 5; B. M. Wakefield, principal of Westside High School; and B. L. Davis, principal of the South Fant Street School. Plaintiff alleged that the two school principals are Negroes and that their schools are within the jurisdiction of District Number 5. The complaint set forth in great detail a series of instances in which Lee contends the defendants, acting within their capacities as agents of the state, have joined in a conspiracy to deny, and have actually denied, him his federal

rights.[1] Plaintiff asserts that his opposition to the NAACP is the reason for the actions taken by the defendants.

In support of his major ground of complaint the plaintiff offers to prove that he applied to the defendants on several occasions in the months of March and April, 1962, for the use of facilities in the above-mentioned schools for a banquet to honor Negro employees of the city who had been in service for fifteen or more years. He contends that the defendants, unlawfully discriminating against him, consistently denied his requests.[2] At the outset the plaintiff was informed "that School District policies do not permit use of school facilities for private social functions." Upon further inquiry he was told that he had "not given details relative to the type banquet" he planned. He was asked to "please complete the enclosed application form and, at the bottom, describe briefly the kind of function [he had] in mind, how people [were] to be selected for invitations and how it [was] to be financed." Plaintiff asserts that no other applicant had been required to submit such data. He alleges that he later received a letter stating that his application was rejected pursuant to paragraph six of the policies and procedures of District Number 5 governing use of school facilities. This paragraph provides that:

"School property shall not be used for private social functions, regular commercial ventures, regular business for profit, or for meetings of controversial nature liable to arouse ill feeling, jealousy, dissension or that might be resented by a considerable number of people in the community."

Without contesting the facial constitutionality of paragraph six, plaintiff alleges that it has been unevenly applied to him. Specifically he offers to prove that: In March, 1961, a local church group conducted a program at the Westside High School to raise money for the defense of youths arrested in Sumter, South Carolina, sit-in demonstrations. In March, 1962, the Veterans of Foreign Wars gave a dance at the South Fant Street School; a charge of one dollar per person was made for admission and liquor was freely sold. During May, 1962, Jehovah's Witnesses conducted three days of meetings at the Westside High School. Also in May, 1962, candidates in the Anderson Democratic Primary spoke in a District Number 5 school and in July, 1962, a Republican candidate for the United States Senate spoke in one of its schools. In addition, a local radio station disc jockey has had several quartets perform at one of the District Number 5 schools; admission fees of one dollar per person were charged.

Plaintiff's position is that by denying his request but permitting these other uses, some social, some business, some controversial, to be made of school facilities, the defendants interpreted paragraph six in a manner that discriminates invidiously against him. He also charges other instances in which the defendants have violated his federal rights and contends that the totality of their prejudicial actions demonstrates the existence of a conspiracy the purpose of which is to deprive him of his federal rights.[3]

1. By way of relief, plaintiff seeks a permanent injunction "from further violation of his Civil Rights"; actual damages of $100,000; punitive damages of $100,000; his costs; and "such other and further relief as may be necessary and appropriate."

2. As to specific injury, plaintiff alleges: "Because the city and county does not provide auditorium facilities which may be used by Negro citizens for public affairs, that the schools are the only accommodations available, and that the action by these defendants in denying the use of said schools to this plaintiff while permitting others to use same, has forced him to cancel all civic programs and caused his business to suffer."

3. In the final paragraphs of the complaint, plaintiff further alleges:
"24. That employes of this plaintiff contacted defendant B. M. Wakefield on May 17, 1962, about news items and photographs of the graduating class of

■ The defendants filed no answer but, pursuant to their motion, the District Court dismissed the complaint on the grounds that it failed to state a claim upon which relief could be granted and that it failed to show that the action was one arising under the Constitution and laws of the United States. The posture of the case requires us, for the purposes of this appeal, to take the plaintiff's allegations as true.[4] Intimating no view on whether the plaintiff should ultimately prevail, we hold that it was error for the District Court to dismiss the complaint without holding a hearing to determine the facts.

■ In this discussion it is difficult to make a nice division between the two stated grounds for dismissal. Bell v. Hosse, 31 F.R.D. 181, 183 (M.D.Tenn. 1962). Taking up first the jurisdictional question, we are of the opinion that the District Court erred in its conclusion that there was no federal jurisdiction over the complaint. See, e. g., Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963). Minimal standards for determining whether federal jurisdiction exists have been set by the Supreme Court. It has directed that:

"Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon and * * * does determine whether he will bring a "suit arising under" .the * . * * [Constitution or laws] of the United States by his declaration .or bill.' [citation omitted] * . * * [W]here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit. * *.

* * * * * *

" * * * The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 681-683, 66 S. Ct. 773, 775-776, 90 L.Ed. 939

---

Westside High School. He told said employes that because of action taken by the school board on May 8, 1962, that he was not permitted to give plaintiff's newspaper news or photographs, yet the June 1, 1962, issue of The Anderson Independent did carry, the photographs of the graduating class.

"25. The plaintiff further avers that all of the girls employed as stenographers in his office finished Westside High School, and that he employs more office help than any Negro business in Anderson. Yet during the last two years defendant B. M. Wakefield has prevented those in charge of Commercial education from giving this plaintiff any information in the employment of qualified girls. That this defendant, when he learned that one of his students worked for plaintiff, summoned her to his office and asked if it were true that she worked for plaintiff part time. When she admitted that she typed, he wanted to know what she typed for this plaintiff.

"26. That this plaintiff brought his nephew to Anderson from Miami, Florida and enrolled him at Westside High School. That defendant B. M. Wakefield made it unbearable for the youth, and finally framed him so that it became necessary to withdraw the boy during mid-term and send him back to Florida.

"27. That the aforesaid acts on the part of this defendant were motivated and actuated by malice, and that he and defendant B. L. Davis, principal of South Fant Street School, entered into a conspiracy to deprive this plaintiff of use of either school, and influenced the members of The School Board and the superintendent to become a part of the conspiracy to deprive this plaintiff of his constitutional rights."

4. E. g., Yates v. Village of Hoffman Estates, 209 F.Supp. 757, 758, (N.D.Ill. 1962). Cf. Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, (4th Cir. March 25, 1963, No. 8729).

(1946). See Baker v. Carr, 369 U.S. 186, 198–200, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed. 2d 605 (1963).

■■ Review of the complaint persuades us that plaintiff explicitly presents federal claims that are neither "immaterial," nor "wholly insubstantial and frivolous," nor "patently without merit." Plaintiff directs attention to the First and Fourteenth Amendments and to the Civil Rights statutes. From his complaint it is evident that he claims substantial injury, under color of state law, at least to his right to the equal protection of the laws; and he also appears to rely upon the due process and the privileges and immunities clauses of the Fourteenth Amendment.[5] Federal jurisdiction over this complaint is well founded and the possible existence of state remedies does not affect this jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1963); Moss v. Jones, 288 F.2d 342, 344 (6th Cir.), cert. denied, 368 U.S. 868, 82 S.Ct. 98, 7 L.Ed.2d 65 (1961).[6]

■ Having decided that there is jurisdiction, we reach the cognate ques-

5. No argument was made that the alleged injurious actions, even if admitted, were not perpetrated under color of state law and it would not assist the defendants so to argue. See Monroe v. Pape, 365 U.S. 167, 183–187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Spires v. Bottorff, 317 F.2d 273 (7th Cir., May 3, 1963). The defendants do argue, however, that "[t]his is not a class action nor was there any allegation of racial discrimination." It is not necessary to determine whether these are challenges to the District Court's jurisdiction or arguments that the complaint failed to state a cause of action. Subject to certain exceptions to be noted later, it is sufficient to say that these defenses are groundless. See, e. g., Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Cohen v. Norris, 300 F.2d 24, 29–30 (9th Cir. 1962); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962); Bonnano v. Thomas, 309 F.2d 320, 321 (9th Cir. 1962); Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963); Roberts v. Trapnell, 213 F.Supp. 49, 50 (E.D.Pa.1962).

6. The defendants contend that the case concerns a matter of purely internal state business which should be handled by the courts of the state. As support they cite Dawley v. Norfolk, 260 F.2d 647 (4th Cir. 1958), cert denied, 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 636 (1959), a case involving a challenge to segregation signs over the toilet rooms in a state court house. That case, however, did not decide that the District Court was without jurisdiction over the subject matter nor did it decide that the complaint failed to state a claim upon which relief could be granted. Rather the per curiam opinion applied the rule that: "Whether or not the Federal court should take cognizance of the case and grant the relief prayed was within the sound discretion of the District Judge sitting in a court of equity. The matter was one which affected the internal operations of the court of the State and within its power to regulate. Under these circumstances, interference on the part of the Federal court was not required * * *." Id. 260 F.2d at 647. Obviously the decision is an illustration of equitable abstention to avoid direct interference by federal courts with the internal practices of state courts. It is noteworthy that the basis for abstention in the Dawley context has been undercut by recent action of the Supreme Court. Johnson v. Virginia, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195 (1963); George v. Clemmons, 373 U.S. 241, 83 S.Ct. 1296, 10 L.Ed.2d 409 (1963); Wood v. Vaughan, 321 F.2d 480 (4th Cir. 1963).

The tenor of defendants' argument on appeal is that this case is an appropriate one for the exercise of equitable abstention. We think otherwise. See the excellent discussion in Marshall v. Sawyer, 301 F.2d 639, 645–647 (9th Cir. 1962); see also McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963); Bonanno v. Thomas, 309 F.2d 320, 321 (9th Cir. 1962); Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962) (by implication). Moreover, since this was not a ground relied upon by the District Court to dismiss and there is no indication that it was raised below, it may not now be raised on appeal.

tion, "[w]hether the complaint states a cause of action on which relief could be granted * * *." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776 (1946). We do not consider how strong a case the plaintiff may be able to prove or whether he will in the end prevail, for "[w]e have been admonished that * * * 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' See Conley v. Gibson, [355 U.S. 41] at 45–46, 78 S.Ct. [99] at 101–102, 2 L.Ed.2d 80 [1957]." Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4th Cir. March 25, 1963) (No. 8729). Accord, Marshall v. Sawyer, 301 F.2d 639, 647 (9th Cir. 1962); Bell v. Hosse, 31 F.R.D. 181, 183–184 (M.D. Tenn.1962). We cannot at this time say that plaintiff's complaint is so utterly deficient and insubstantial as to be subject to dismissal in toto under the Conley test. It cannot be said that the allegations, if proved, could not conceivably entitle him to federal relief.[7]

■ We agree with the District Court that no claim has been stated under Rev. Stat. §§ 1977 and 1978, 42 U.S.C.A. §§ 1981 and 1982. By their very terms, these provisions provide for equal treatment of persons of different races [8] and, by plaintiff's concession, there is in this case no issue of racial discrimination. The question remains whether his claims are cognizable under Rev.Stat. § 1979, 42 U.S.C.A. § 1983,[9] and Rev.Stat. § 1980 (3), 42 U.S.C.A. § 1985(3).[10] We hold that they are.

The complaint is that the plaintiff has been deprived of freedom of the press by being excluded from legitimate access to news; that he is being harassed and his business injured by arbitrary denial of access to the Westside High School employment placement service; and that the principal of the Westside High School persecuted his nephew, presumably causing harassment and injury to the uncle as well as the nephew. These are allegations sounding in denial of due process of law and of privileges and immunities of United States citizenship. Plaintiff also alleges that by invidious discrimination he has been denied the

---

7. In Bell v. Hood, supra, the plaintiff's reliance was solely upon the Fourth and Fifth Amendments. Lee, on the other hand, relies not only upon the Constitution, specifically the First and Fourteenth Amendments, but also upon the Civil Rights Acts. His comprehensive allegations invoke the broad sweep of these statutes, which entitle him upon proof to complete relief. Therefore, it is not necessary at this time, as it was in Bell v. Hood, to consider whether the plaintiff's allegations are sufficient directly under the constitutional provisions.

8. See, e. g., Snowden v. Hughes, 321 U.S. 1, 5 n. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Hague v. Committee for Industrial Organization, 307 U.S. 496, 509, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.).

9. " § 1983. Civil action for deprivation of rights
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

10. § 1985(3) provides, in pertinent part:
"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

equal protection of the laws. As evidence of this denial he cites the manner in which he was barred from using the schools' physical facilities and from access to news and to the high school's placement service. Taken as a whole, the defendants' hostile conduct shows, according to the plaintiff, a conspiracy for the purpose of depriving him of his federal rights.

While it is possible that the particular section, Rev.Stat. § 1979, 42 U.S.C.A. § 1983, will not support an action for conspiracy,[11] it will support actions against the individual defendants, not only for denials of due process of law and of privileges and immunities of United States citizenship,[12] but probably for denials of the equal protection of the laws as well.[13] Remedies against conspiracy are unquestionably provided in Rev.Stat. § 1980(3), 42 U.S.C.A. § 1985(3). While we recognize that this provision "defines conspiracies of a very limited character,"[14] it is not necessary or desirable, on this record, to determine the limits of either this section or of Rev.Stat. § 1979, 42 U.S.C.A. § 1983.[15] We merely hold that even if the two provisions are limited as above indicated, they furnish a sufficient basis for federal relief.

On a motion to dismiss for failure to state a cause of action, a plaintiff, especially one appearing pro se, is entitled to all reasonable presumptions. Our conclusion that the plaintiff has met this first test does not, therefore, preclude later summary disposition of all or part of the case when the District Court comes to consider plaintiff's legal contentions in the light of appropriate findings of fact. See Moss v. Hornig, 314 F.2d 89, 91 (2d Cir. 1963); cf. Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962); Marshall v. Sawyer, 301 F.2d 639, 647–648 (9th Cir. 1962) (concurring opinion). It may be that the proof will fall short of the allegations and that even if proved they will, in their fully developed context, not attain the level of federally remediable constitutional and statutory deprivations. However, the plaintiff is entitled to his day in court and a hearing is required.

Reversed and remanded for proceedings in accordance with this opinion.

11. See Egan v. City of Aurora, 291 F.2d 706, 708 (7th Cir.), complying with mandate of 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); but see Cohen v. Norris, 300 F.2d 24, 27–28 (9th Cir. 1962); Hoffman v. Halden, 268 F.2d 280, 292–293 (9th Cir. 1959); Brazier v. Cherry, 293 F.2d 401 (5th Cir.) (semble), cert denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). The Supreme Court has not yet passed upon this precise issue.

12. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741, mandate followed, 291 F.2d 706 (7th Cir. 1961); Maryland v. Heyse, 315 F.2d 312 (10th Cir. 1963); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Smith v. Cremins, 308 F.2d 187 (9th Cir. 1962); Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); Adams v. City of Park Ridge, 293 F.2d 585, 589 (7th Cir. 1961); Roberts v. Trapnell, 213 F. Supp. 49 (E.D.Pa.1962); Yates v. Village of Hoffman Estates, 209 F.Supp. 757 (N.D.Ill.1962); Cox v. Shepherd, 199 F.Supp. 140 (S.D.Cal.1961); Bell v. Hosse, 31 F.R.D. 181 (M.D.Tenn.1962).

13. Hague v. Committee for Industrial Organization, 307 U.S. 496, 526, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Stone, J.); Moss v. Hornig, 314 F.2d 89, 92 (2d Cir. 1963); Adams v. City of Park Ridge, 293 F.2d 585, 589–590 (7th Cir. 1961); Agnew v. City of Compton, 239 F.2d 226, 230 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947).

14. Collins v. Hardyman, 341 U.S. 651, 660, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). "[I]t is clear that this statute does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality, of 'equal protection of the law,' or of 'equal privileges and immunities under the law.'" Id. 341 U.S. at 661, 71 S.Ct. at 941.

15. Cf. Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962); Marshall v. Sawyer, 301 F.2d 639, 647–648 (9th Cir. 1962) (concurring opinion).