Maurice Emile **BEAUREGARD**, Plaintiff,

v.

William H. **WINGARD**, Ernest C. Michaels and Gene Cowley, Defendants.

Civ. No. 2785.

United States District Court
S. D. California, S. D.

June 1, 1964.

James Schwartz, Beverly Hills, Cal., for plaintiff.

John S. Rhoades, San Diego, Cal., for defendant Gene Cowley.

James L. Focht, Jr., San Diego, Cal., for defendant Ernest C. Michaels.

WEINBERGER, District Judge.

Plaintiff's original complaint herein was attacked by defendants on several grounds. The Court first considered and granted a motion to make more definite and certain. A similar motion was directed to the first amended complaint. In granting the second motion we said, in our memorandum to counsel dated September 17, 1963:

"We are here confronted with grave constitutional questions. * * In justice to the parties and to the Court, the complaint should be one which clearly states the allegations which plaintiff means it should state, and these allegations should be

understood by the parties and by the Court before a decision on the motion to dismiss is made. The necessity for a clean-cut type of pleading in this case is referred to in the opinion of Hoffman v. Halden, 9 Cir., 268 F.2d 280, p. 294[1] and in the cases cited in Note 15 at such page, and in Cohen v. Norris, 300 F.2d 24, 33, the Court of the Ninth Circuit suggested amendment to amplify the factual setting of the incidents and to eliminate surplusage and other inconsistencies."

The second amended complaint was filed September 23, 1963, and the previous motion to dismiss was, by permission of the Court deemed directed to such complaint. Briefs were ordered, and after each of the parties had been granted additional time to submit their respective briefs, the matter was submitted on March 16, 1964.

SECOND AMENDED COMPLAINT

Plaintiff alleges that his action is one to redress the deprivation, under color of law of the State of California, of the rights, privileges or immunities secured by the Constitution within the meaning of Section 1983 of Title 42 U.S.C.A.

Plaintiff further alleges that defendant Wingard was at all times mentioned in the complaint the duly elected, appointed, qualified and acting Chief of Police of the City of Oceanside; defendant Michaels was at all times mentioned a police officer of said City; defendant Cowley was at all times mentioned a deputy sheriff, rendering services as a fully authorized police officer of the City of Oceanside; all defendants were at all times mentioned acting within the scope of their employment as Chief of Police and police officers, and at all times mentioned acted under color of authority as such police officers.

There is also an allegation as to each officer that he was acting "individually and as a duly authorized agent and employee of the City of Oceanside". We do not understand the use of the word "individually", since defendants could not act as "individuals" and as police officers. If they acted as individuals, no cause of action would be stated under Section 1983 of 42 U.S.C.A., because as individuals, they could not act under "color of law of the State of California". Since it is clear that plaintiff refers to all the acts of defendants being performed in their official capacity, we shall treat the word "individually" as surplusage.

It is alleged that plaintiff was a candidate for the office of City Councilman in the City of Oceanside, and during the political campaign plaintiff severely criticized the Chief of Police, defendant Wingard, and demanded his removal from office and further, verbally attacked the Oceanside Police Department; that defendant Wingard warned plaintiff to "lay off or else. * * *" but plaintiff continued his criticism; that plaintiff's attacks upon the defendant Wingard and upon the Police Department created resentment and a desire for revenge and that the defendants thereafter deliberately, intentionally and maliciously conceived a plan to force plaintiff into a compromising act or position in order to give it the false appearance of a crime, cause plaintiff to be arrested, give him a police record, bring him into disgrace in his community, as a punishment for his criticism aforesaid.

It is then alleged that pursuant to such plan plaintiff was arrested by defendants without a warrant having been issued for such arrest; that plaintiff was taken into custody by defendants and by them conveyed to jail, thus being deprived of his liberty; that plaintiff was by defendants booked into jail on a criminal charge, imprisoned for several hours and thus deprived of his liberty; that after a trial in the Superior Court of San Diego County, plaintiff was acquitted; that all

---

1. Hoffman v. Halden stated the decisional law as it existed at the time that decision was rendered. This case was over-ruled in Cohen v. Norris on one point only, necessity of discriminatory intent. Hoffman v. Halden has frequently been cited and is recognized as authority on other points decided in the opinion.

of the acts of the defendants were without cause, were malicious and intentional and done for the purpose of punishing plaintiff for having criticized a defendant or defendants, and were in violation of plaintiff's rights under the Fourteenth Amendment.

## MOTION TO DISMISS

The motion to dismiss urges the following grounds:

1. The Court lacks jurisdiction of the subject matter.

2. The complaint discloses on its face that the cause of action is barred by the Statute of Limitations.

3. The complaint fails to state a claim against defendants upon which relief can be granted.

## JURISDICTION

Jurisdiction of the subject matter is found by virtue of Section 42 U.S.C.A § 1983 (R.S. § 1979), 28 U.S.C.A. § 1343 and 28 U.S.C.A. § 1331.[2]

## STATUTE OF LIMITATIONS

■■■ Counsel for defendants view the complaint as containing allegations of false arrest or malicious prosecution or both, and seek to apply the California statutes of limitation for such causes of action. There are allegations which resemble those found in California actions for false arrest, and there are allegations which resemble those found in California actions for malicious prosecution.[3] However, a new cause of action in the Federal Courts was created by the Civil Rights Acts. (See concurring opinion, Mr. Justice Harlan, Monroe v. Pape, 365 U.S. 167, at 196, 81 S.Ct. 473, at 489, 5 L.Ed. 2d 492). Since no statute of limitations is provided by Federal law, we are not precluded from using the most applicable state statute. (Hoffman v. Halden, 9 Cir. 1959, 268 F.2d 280, 305). California Code of Civil Procedure, Section 338, subd. 1, providing that actions on liability created by statute must be brought within three years is applicable to an action in a California Federal Court under 42 U.S.C.A. § 1983. (Smith v. Cremins, 9 Cir. 1962, 308 F.2d at 187, 189, 190). The acts of which plaintiff complains are alleged to have occurred on or about August 30, 1961; the original complaint was filed October 8, 1962. There would appear to be no bar of the statute of limitations.

---

2. 42 U.S.C.A. § 1983 (R.S. § 1979):
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
28 U.S.C.A. § 1343:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

28 U.S.C.A. § 1331(a):
"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

3. In Barrier v. Alexander (1950) 100 Cal. App.2d 497, 224 P.2d 436 at 438 it is said: "False imprisonment is the unlawful violation of the personal liberty of another, and malicious prosecution is the procuring of the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause."
See also: Donati v. Righetti, 9 Cal. App. 45, 97 P. 1128, and (Alabama) Nesmith v. Alford, 5 Cir.1963, 318 F.2d 110, 118, cert. den., Sullivan v. Nesmith, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420.
Under California law a police officer is liable civilly for false arrest and imprisonment without justification. Dragna v. White, 45 Cal.2d 469, 289 P.2d 428.

## CAUSE OF ACTION

■ In passing upon a motion to dismiss, we are required to consider the allegations of the complaint, as distinguished from conclusions, as admitted facts. We shall therefore refer to the alleged acts of the defendants, as facts, without, of course, so finding.[4]

■ *Color of law.* In suits under Section 1983 of Title 42 U.S.C.A. we first consider whether the acts complained of were done under "color of any statute, ordinance, regulation, custom, or usage, of any State". For purposes of brevity, we shall refer to this element as "color of law". Perhaps the case most often cited for a definition of "color of law" is United States v. Classic, 1941, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368. We quote:

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

■ The defendants were officers of the City of Oceanside at the time the acts complained of were committed; defendants were charged by law with enforcing the Penal Code of California, and they arrested plaintiff, charged him with a violation of such Code, Section 337a, Subdivisions 1 and 3 (bookmaking) and imprisoned him under authority of and pursuant to such arrest. This they were authorized to do under the state law, and though they misused their authority, abused their position, acted not under or pursuant to law but "under pretense of law" for their own personal revenge and satisfaction they were still acting "under color of" state law.[5]

*Immunity.* Defendants maintain that plaintiff cannot state a cause of action against defendants because of "the traditional immunity of law officers from liability for malicious prosecution", since it is alleged and the allegations of the complaint show that defendants were acting within the scope of their official duties.

The California Supreme Court opinion in White v. Towers, 1951, 37 Cal.2d 727, 235 P.2d 209, 28 A.L.R.2d 636, is cited as the leading authority. (The opinion was accompanied by a strong dissent from Justice Carter in which Justice Schauer concurred). The reasons given in the majority opinion are similar to those given for immunity of Federal law enforcement officers in Judge Learned Hand's opinion in Gregoire v. Biddle, 2 Cir., 177 F.2d 579; the latter opinion has been cited as authority in some of the later California cases along with White v. Towers.[6]

We quote from Gregoire v. Biddle, beginning at p. 581 of 177 F.2d:

" * * * It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the

---

4. United States v. New Wrinkle, 342 U.S. 371, 373, 72 S.Ct. 350, 351, 96 L.Ed. 417; W. A. Mack, Inc. v. General Motors Corp., 7 Cir., 260 F.2d 886; Hess v. Petrillo, 7 Cir., 259 F.2d 735, cert. den., 359 U.S. 954, 79 S.Ct. 743, 3 L.Ed.2d 761; McCleneghan v. Union Stock Yards Co., 8 Cir., 298 F.2d 659.

5. Screws v. United States, 1944, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495; Monroe v. Pape, 1961, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492.

6. Muskopf v. Corning Hospital District, 1961, 55 Cal.2d 211, 221, 11 Cal.Rptr. 89, 95; Legg v. Ford, 1960, 185 Cal.App. 2d 534, 8 Cal.Rptr. 392, 397; Hardy v. Vial, 1957, 48 Cal.2d 577, 311 P.2d 494, at 497, 66 A.L.R.2d 739: California Supreme Court Chief Justice Gibson quotes from Gregoire v. Biddle as stating the "policy underlying the doctrine of absolute immunity".

claim is well founded until the case has been tried, and to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

"[1] The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the *occasion* must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. For the foregoing reasons it was proper to dismiss the first count."

■ It must be said that the acts of the officers as related in the complaint showed that they were acting within the scope of their official powers.[7]

■ A suit under Section 1983 of Title 42 U.S.C.A. of course involves the prohibition of a federal statute, and it is a familiar doctrine that such a statute may not be set at naught or its benefits denied by state statutes, state common law rules, or state decisional law.[8]

■ In cases involving civil rights, California cases stating California public policy as to immunity for California law enforcement officers, do not govern;[9] we must turn to federal cases. And, likewise, we are not concluded by federal cases based on diversity of citizenship;[10] nor can we regard federal cases concerning federal law enforcement officers as controlling, for such officers, acting as such, are not included within the phrase "under color of" state law, and a suit

7. See People v. Blocker, 1961, 197 Cal. App.2d 420, 17 Cal.Rptr. 247, cert. den., Blocker v. Calif., 370 U.S. 962, 82 S.Ct. 1619, 8 L.Ed.2d 828; People v. Buckman, 186 Cal.App.2d 38, 8 Cal.Rptr. 705 and other California cases to general effect that officers are permitted to afford opportunity for others to commit crime; see Calif.Penal Code Section 836, Arrest without warrant.

8. Sola Electric v. Jefferson Electric Co., 1942, 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165; McNeese v. Board of Ed., 1963, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622; Nesmith v. Alford, 6 Cir., 1963, 318 F.2d 110, 124, rehearing denied, 5 Cir., 319 F.2d 859, cert. den., Sullivan v. Nesmith, 375 U.S. 975, 84 S.Ct. 489; Marshall v. Sawyer, 9 Cir., 1962, 301 F.2d 639, 646.

9. See cases cited in Note 8.

10. Phelps v. Dawson, 8 Cir., 97 F.2d 339, 116 A.L.R. 1343, cited by defendants was a "diversity" case, as was Springfield v. Carter, 8 Cir., 175 F.2d 914.

for violation of civil rights under 42 U.S.C.A. § 1983 may not be brought against them.[11]

It is true that in Civil Rights cases state legislators, state judges, and state and city prosecuting attorneys have been cloaked with judicial immunity or some phase of it.[12]

Counsel for defendants have mentioned the 7th Circuit decision of Stift v. Lynch, 267 F.2d 237, noting the comment in a recent 7th Circuit case, Phillips v. Nash, 311 F.2d 513, cert. den. 374 U.S. 809, 83 S.Ct. 1700, 10 L.Ed.2d 1033 that Stift was not specifically over-ruled by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473.

Stift involved a Civil Rights suit against a sheriff and his deputy, a justice of the peace and a state's attorney and his deputy. The Court, while characterizing the conduct of defendants as "reprehensible", held the complaint failed to state a cause of action against them, basing its decision as to the justice of the peace and state's attorney on common law immunity. The actions of the police officers were a far cry from those described in Monroe v. Pape. Whether the Court in Stift dismissed the action as to the sheriff and his deputy on the theory that they were "immune", or on the theory that the complaint failed to state the allegation as to discrimination specifically insisted upon in Agnew v. Compton and ruled unnecessary in Cohen v. Norris, we cannot decipher from the opinion; and, by this discussion, we do not voice an opinion as to whether the actions of the officers in Stift v. Lynch presented a violation of the Civil Rights Act. We are of the opinion, however, that in Civil Rights suits, except as to judges and prosecuting attorneys, Stift v. Lynch cannot be cited as authority.[13]

The language in Cohen v. Norris, 9 Cir. 1962, 300 F.2d 24, 33, seems quite plain. We have found no authoritative case law extending any common-law immunity to police officers in Civil Rights cases,[14] and we hold that immunity cannot be urged by such officers as a defense to an action under Section 1983 of Title 42 U.S.C.A.

11. Laughlin v. Rosenman, 1947, 82 U.S. App.D.C. 164, 163 F.2d 838 as to second cause of action; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, 581 as to second cause of action; O'Campo v. Hardisty, 9 Cir., 1958, 262 F.2d 621, 625 for an interesting discussion as to immunity of U. S. Internal Revenue Agents; see also concurring opinion of Mr. Justice Jackson in Brown v. Allen, 344 U.S. 443, 535, 73 S.Ct. 397, 424, 97 L.Ed. 469, n6 noting the contrast between protection afforded state and federal law enforcement officers.

12. Legislators: Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019.

Judges: Sires v. Cole, 9 Cir., 1963, 320 F.2d 877, 879, cert. den., 374 U.S. 847, 83 S.Ct. 907, 10 L.Ed.2d 1067; Johnson v. MacCoy, 9 Cir., 1960, 278 F. 2d 37, 41; Larsen v. Gibson, 9 Cir., 1959, 267 F.2d 386; Saier v. State Bar of Michigan, 6 Cir., 1961, 293 F.2d 756, 761.

Prosecuting Attorneys: Sires v. Cole, supra, 320 F.2d 880; Kostal v. Stoner, 10 Cir., 1961, 292 F.2d 492, 493; Smith v. Dougherty, 7 Cir., 1961, 286 F.2d 777, cert. den., 368 U.S. 903, 82 S.Ct. 180, 7 L.Ed.2d 97.

13. See Egan v. City of Aurora, 7 Cir., 1960, 275 F.2d 377, the statement of the Supreme Court remanding it in Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741, and the later decision of the 7th Circuit in Egan v. Aurora, 291 F.2d 706 (1961), written by Circuit Judge Duffy, author of the Stift opinion: " * * * However, under recent decisions of the Supreme Court, we feel that there is nothing we can do but reverse the judgment of the District Court and remand for a trial upon the merits against only the policy officers named as defendants."

14. We note the statement in Selico v. Jackson, D.C.S.D.Cal., 1962, 201 F.Supp. 475, Part III, p. 478, "that a public official is immune from civil suit based upon discretionary acts performed within the scope of his authority, regardless of the motives with which he performs his duties, and this immunity is not abrogated by the Civil Rights statutes;" we presume this statement refers to those *officials* to whom judicial immunity is accorded or some phase of it extended, or to federal law enforcement officers, rather than to state law enforcement officers.

Defendants cite several cases in support of their views that absent violence, arrest without warrant and without probable cause should not be held a violation of constitutional rights. They mention that in Stringer v. Dilger, 10 Cir., 313 F.2d 536, plaintiff was arrested and beaten; in Cohen v. Norris, 9 Cir., 300 F.2d 24, plaintiff was searched, without a warrant and was struck; in Selico v. Jackson, D.C., 201 F.Supp. 475, plaintiff was wrongfully arrested, confined, and wantonly assaulted and beaten. Agnew v. City of Compton, 9 Cir., 239 F.2d 226, and Puett v. City of Detroit, 6 Cir. 1963, 323 F.2d 591, are also cited. Stringer v. Dilger, 10 Cir. 1963, 313 F.2d 536, 541, offers no assistance on this particular point. It cannot be ascertained from the opinion whether the Court was of the view that each of the acts constituted a violation of plaintiff's constitutional rights, or that *all* of the acts, *together,* accomplished the violation.

Cohen v. Norris, 9 Cir. 1962, 300 F.2d 24, as we read the opinion, was decided on the theory set forth on page 31:

"The security of one's privacy against arbitrary intrusion by police is 'at the core of the Fourth Amendment * * *.' Wolf v. People of State of Colorado, 338 U.S. 25, 27 [69 S.Ct. 1359, 1361, 93 L.Ed. 1782]. An intrusion by the police in the form of a search and seizure is arbitrary, and therefore 'unreasonable,' if not authorized by law. The only intrusions by the police which are authorized are those: (1) which are made under a valid search warrant, incident to a valid arrest, or under exceptional circumstances which dispense with the need of a search warrant (Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487); and (2) where the *actual purpose* of the officers in making the search is to ascertain whether articles which the officers have a right to seize are on the person or premises being searched. See Abel v. United States, 362 U.S. 217, 225–228 [80 S.Ct. 683, 4 L.Ed.2d 668]." (Emphasis supplied).

The Court then observed that if the complaint contained *factual* allegations that appellant was subjected to a search and seizure which was "unreasonable" within the contemplation of the Fourth Amendment, it would withstand a motion to dismiss. The Court then reviewed the allegations of the four "overt acts" pleaded in the complaint. With reference to the first, the Court said:

"We conclude that, as to the first overt act, the described allegations that appellees searched appellant without arresting him and without having a search warrant sufficiently allege an unreasonable search to withstand a motion to dismiss." (p. 32).

The Court then observed:

"It is also our opinion that the further allegations pertaining to the first overt act, concerning the assault, with intent to injure, committed during the course of the search, and the conducting of the search in a manner intended to humiliate appellant, such intent being fulfilled, are *individually* sufficient to establish the unreasonableness of that search, as against a motion to dismiss. As stated above, the only *legitimate* purpose of a search is to ascertain whether articles which the officers have a right to seize are on the person or premises being searched. Any search is unauthorized and so becomes unreasonable in the constitutional sense when *it goes beyond that purpose.* * * *" (Emphasis supplied).

With reference to searches with a "legitimate" purpose, the Court said, at page 32:

"Where, in the exercise of their discretion, officers believe that a reasonable exercise of force, or a conducting of the search in a public place, is necessary to effectuate the *legitimate* purpose of the search, the fact that an assault results or humili-

ation is suffered does not render the search unreasonable. But here it is alleged that appellees had *unlawful purposes* in exercising force and in conducting a public search. Whether appellant can prove that such purposes existed, or what if any damages may have been sustained, are matters which are not now before us. We only hold that the allegation is sufficient to give him an opportunity to prove it." (Emphasis supplied).

The Court then mentioned that what it had said as to the first overt act was true of the second. As to the third overt act, the opinion reads, at page 33:

"* * * As to the third overt act, a claim is stated only with regard to the lack of authority to make the search, *there being no allegations as to an assault or humiliation.*" (Emphasis supplied).

The Court held that the allegations contained in the first, second, *and third* overt acts sufficiently stated a claim under 42 U.S.C.A. § 1983 as to *each*, but that the fourth overt act did not state a claim on any theory:

"* * * Facts are not alleged showing that the search was unauthorized. There are no allegations as to an assault. While there is a faint implication that a purpose to humiliate might have been involved, we do not regard it as sufficient."[15]

In Selico v. Jackson, D.C.S.D.Cal.1962, 201 F.Supp. 475, there were allegations of an arrest without warrant and without probable cause; that the defendants were wrongfully and illegally detained at the Wilshire Police Station; and that they were maliciously and unlawfully assaulted and beaten by defendants, resulting in severe bodily injury. The Court said, at page 477:

"It is axiomatic that the due process clause of the Fourteenth Amendment precludes state action of this nature and that plaintiffs' contentions, if sustained by the evidence, would invalidate any confession or conviction resulting from such treatment. * * * "

At page 478 the Court observed that not every case involving a wrongful arrest gives rise to a federal right of action against the arresting officers, and that state police officials must be protected from tort actions based upon honest misunderstandings of statutory authority and mere errors of judgment. The Court further stated that officials "should not be subjected to inconvenience and unpleasantness of a civil suit on the basis of *vague allegations* of 'wilfulness', 'malice', 'wantoness' and 'illegality' inserted in the pleadings". (Emphasis supplied).

At page 478 the Court made an observation which should be read carefully, and when so read is not open to an interpretation that physical assault must accompany an arrest in order that a cause of action may be stated under 42 U.S.C.A. § 1983. Judge Clarke said, in effect, that where not only an illegal and unreasonable arrest and an illegal detention was alleged, but in addition, an unprovoked

15. The third overt act as set forth in the complaint discussed in Cohen v. Norris reads: (the defendants) "seized the plaintiff and imprisoned him; they searched the plaintiff as well as his automobile; they had no search warrant; nor did they have any warrant of arrest; they filed no charge or complaint against plaintiff; they did not bring him before a magistrate; they had no probable cause to arrest or imprison him."

The fourth overt act as set forth in the complaint under discussion reads: (the defendants) "again seized and imprisoned the plaintiff; they searched him, and did so in the presence of over one hundred persons present at said restaurant, although the plaintiff requested that if they were going to search him, they do so in the kitchen or some place where plaintiff would not be in public view."

It was also alleged generally in another paragraph that each of the acts was committed maliciously and oppressively with the knowledge on the part of the defendants that they were exceeding their authority as police officers and with the knowledge that they were depriving plaintiff of his constitutional rights.

physical violence upon the person of a plaintiff, *it could not be seriously urged that defendant acted as a result of error or honest misunderstanding.*

In Agnew v. City of Compton, 9 Cir. 1956, 239 F.2d 226, the Court proceeded under the decisional law as it then stood, apparently by virtue of Snowden v. Hughes, 321 U.S. 1, 5, 64 S.Ct. 397, 88 L.Ed. 497, and rule that the complaint did not state a cause of action under 42 U.S.C.A. § 1983; that such a complaint must contain an allegation that the purpose of the arrest was to discriminate between persons or classes of persons, otherwise, every common-law action for false arrest would be cognizable in the federal courts under the Civil Rights Act. The holding as to the necessity of an allegation as to discrimination has since been over-ruled by the same court in Cohen v. Norris, 9 Cir. 1962, 300 F.2d 24, 28.

The Court intimated that an allegation that the arrest was without a warrant and without probable cause for a misdemeanor not committed in the presence of the arresting officer or otherwise, would at most make it appear that the officers misunderstood the ordinance under which they arrested plaintiff; this, in itself would not amount to a deprivation of civil rights, for: (239 F.2d p. 231)

"No one has a constitutional right to be free from a law officer's honest misunderstanding of the facts or law in making an arrest."

The Court then observed that additional allegations that the arrest was spiteful, malicious, wrongful and oppressive precluded the assumption that the officers proceeded under an honest misunderstanding of the ordinance; that with the further allegations of malice, etc. the complaint stated a common-law action for false arrest and imprisonment, but did not absent the allegation of a purpose to discriminate state a cause of action under the Civil Rights Act, Section 1983.

Puett v. City of Detroit, 6 Cir. 1963, 323 F.2d 591, is of no assistance to the Court. The opinion mentions the arresting officer was not liable if the trial court or prosecuting officers unlawfully retained plaintiff's driver's license; the short opinion does not relate sufficient of the allegations of the complaint for comparison with the allegations of the pleading herein.

We are unable to agree that a necessary ingredient to a suit under the Civil Rights Act is that bodily assault or any type of bodily discomfort be suffered by the complainant. As Justices of our Supreme Court have noted several times, the blood of the accused is not the only hallmark of unconstitutional activity of police. (Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 279, 4 L.Ed.2d 242; Reck v. Pate, 367 U.S. 433, 440, 81 S.Ct. 1541, 1546, 6 L.Ed.2d 948). And in Spano v. New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, Chief Justice Warren, noticing the absence of brutality in a case involving unconstitutional action of police, stated that as police methods become "more sophisticated" the duty of the courts to enforce constitutional protections does not cease, "[i]t only becomes more difficult because of the more delicate judgments to be made".

Section 1983 of Title 42 U.S. C.A. was enacted to enforce the Fourteenth Amendment. It is not required that a complaint drawn under the Section set out the particular portion of the Constitution or law securing the right of which plaintiff has been deprived. However, it is necessary for the Court, in order to sustain such a cause of action, to ascertain from the confines of the Constitution or law that such right exists. In this connection, our attention has been directed not only toward the Fourteenth Amendment but also to the Fourth. Extensive research on the part of Court and counsel was sparked by the note at page 28 of the opinion of the Court of Appeals for this Circuit, Cohen v. Norris, 9 Cir., 300 F.2d 24:

"The Fourth Amendment guarantees the right of the individual to be secure against unreasonable arrests

as well as against unreasonable searches and seizures. Worthington v. United States, 6 Cir., 166 F.2d 557, 562; United States ex rel. Potts v. Rabb, 3 Cir., 141 F.2d 45. Likewise, the provisions of the Fourth Amendment forbidding the issuance of warrants except upon probable cause applies to warrants of arrest as well as search warrants. Albrecht v. United States, 273 U.S. 1, 5 [47 S.Ct. 250, 71 L.Ed. 505]; Wrightson v. United States, 95 U.S.App.D.C. 390; 222 F.2d 556, 559. But we are not called upon to decide whether, as assumed in Agnew, the provisions of the Fourth Amendment forbidding unreasonable arrests and prohibiting issuance of warrants of arrest except on probable cause have been made applicable to the states by reason of the due process clause of the Fourteenth Amendment."

Prior to the submission of the motion, we forwarded to counsel a memorandum in two parts. We included citations and our comments on most of the cases decided by the United States Supreme Court with reference to the Bill of Rights and the Fourteenth Amendment since Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288; also we cited many opinions of Courts of Appeal, and included a list of Law Review Articles which had been mentioned by the Supreme Court in various cases, together with other articles which our own research had found of interest. The briefs filed by counsel in response to our request for their views show industry and acumen. We are grateful for the assistance thus provided. *The Fourth and Fourteenth Amendments.* The Fourth Amendment reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The portion of the Fourteenth Amendment which interests us for the purpose of this case reads:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

It is axiomatic that the first Eight Amendments comprising the Bill of Rights were intended as restrictions upon the Federal Government, while the Fourteenth Amendment was placed in the Constitution as a limitation upon the States.

The relation of the Bill of Rights to the Fourteenth Amendment has been the subject of much discussion in opinions of the Supreme Court for many years. Some of the Justices have been of the opinion that all of the first Eight Amendments, by their terms and as such, are included in the constitutional conception of due process. These views have never commanded a majority of the Court.[16] Other Justices, some of them expressing the majority opinion, have stated that the

16. Mr. Justice Douglas' dissent in Poe v. Ullman, 1961, 367 U.S. 497, 515, 516; 81 S.Ct. 1752, 1762, 1763, 6 L.Ed.2d 989: "Yet the constitutional conception of 'due process' must, in my view, include them all until and unless there are amendments to remove them. That has indeed been the view of a full court of nine Justices, though the members who make up that court unfortunately did not sit at the same time."

Other opinions expressing the same views, but not majority opinions: Betts v. Brady, 316 U.S. 455, 474, note, 62 S.Ct. 1252, 1262, 86 L.Ed. 1595; Adamson v. California, 332 U.S. 46, 71, 72, 67 S.Ct. 1672, 1686, 1687, 91 L.Ed. 1903, 171 A.L.R. 1223; In re Oliver, 333 U.S. 257, 289, 68 S.Ct. 499, 511, 92 L.Ed. 682; Wolf v. Colorado, 338 U.S. 25, 47, 69 S.Ct. 1359, 1368; Rochin v. California, 342 U.S. 165, 175, 72 S.Ct. 205, 211, 96 L.Ed. 183, 25 A.L.R.2d 1396; Cohen v. Hurley, 366 U.S. 117, 134, 81 S.Ct. 954, 964, 6 L.Ed. 156; Gideon v. Wainwright, 1963, 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (Justice Douglas observed that since the adoption of the 14th Amendment, ten justices had felt that it protected all the safeguards expressed in the Bill of

first Eight Amendments are not, by their terms and as such, applicable to the States.[17] Other opinions have said that a particular Amendment is by its terms and as such, a prohibition against State action, but we have not found unanimity for this expression as to any of the Bill of Rights Amendments except the First.[18]

■ The principle governing the relation of the Bill of Rights to the Fourteenth Amendment which we believe has received approval of a majority of the Justices of the Supreme Court throughout the years and which is not contradicted by any majority opinion, is:

Insofar as due process under the Fourteenth Amendment requires the States to observe any of the immunities that are valid as against the Federal Government by force of specific pledges of particular amendments, it does so because they have been found to be implicit in the concept of ordered liberty and thus, through the Four-

teenth Amendment become valid as against the States.[19]

We deem it important to the matter before us that we give close scrutiny to Wolf v. Colorado, 1959, 338 U.S. 25, 69 S.Ct. 1359, and try to determine from its language the exact manner in which the search and seizure prohibitions referred to in the Fourth Amendment have been held immune from State invasion. Was the opinion of the Court one wherein and whereby an Amendment or some portion of it, was, by its terms and as such, made applicable to the States? or was it an opinion which found certain prohibitions, guarantees, commands, in an Amendment to be implicit in the concept of ordered liberty?

It seems to us that a practical method of interpreting a decision is to study the earlier and later expressions on the same subject by the Justice who announced the opinion, and to give special weight to the author's later statements as to what he meant by what he said, as

Rights.) Lombard v. State of Louisiana, 1963, 373 U.S. 267, 274, 83 S.Ct. 1122, 1126, 10 L.Ed.2d 338.

17. Malinski v. New York, 324 U.S. 401, 414, 415, 416, 65 S.Ct. 781, 787, 789, 89 L.Ed. 1029; State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 468, 67 S.Ct. 374, 378, 91 L.Ed. 422 (concurring). Adamson v. People of California, 332 U.S. 46, 54, 67 S.Ct. 1672, 1676, 1680, (majority); Wolf v. Colorado, 338 U.S. 25, 26, 69 S.Ct. 1359, 1360, (majority); Breithaupt v. Abram, 352 U.S. 432, 434, 77 S.Ct. 408, 409, 410, 1 L.Ed.2d 448 (majority); Knapp v. Schweitzer, 357 U.S. 371, 375, 376, 78 S.Ct. 1302, 1305, 1306, 2 L.Ed.2d 1393 and Bartkus v. Illinois, 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 634 (majority opinions); Rios and Elkins v. United States, 364 U.S. 206, 236, 80 S.Ct. 1453, 1455, 4 L.Ed.2d 1694 (dissent of four Justices).

18. Edwards v. South Carolina, 1963, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed. 2d 697 and cases cited.

19. State of Louisiana v. Resweber, 329 U.S. 459, 468, 469, 67 S.Ct. 374, 378, 379, as quoted above, concurring opinion, Mr. Justice Frankfurter, citing Palko v. Connecticut, 302 U.S. 319, 324, 325, 58 S. Ct. 149, 151, 152.

From majority opinion, Mr. Justice Douglas, Screws v. United States, 1945, 325 U.S. 91, 95, 65 S.Ct. 1031, 1032, 89 L. Ed. 1495, 162 A.L.R. 1330:

"There have been conflicting views in the Court as to the proper construction of the due process clause. The majority have consistently construed it in broad general terms. Thus it was stated in Twining v. New Jersey, 211 U.S. 78, 101 [29 S.Ct. 14, 20, 53 L.Ed. 97] * * *. The same standard was expressed in Palko v. Connecticut, 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288], in terms of a 'scheme of ordered liberty'."

See also majority opinion, Mr. Justice Black in Gideon v. Wainwright, 1963, 372 U.S. 335, 341, 342, 83 S.Ct. 792, 794, 795, approving the standard for deciding due process set out in Palko v. Connecticut, supra and Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, though reversing the ruling on the merits, and see concurring opinion, Mr. Justice Harlan, p. 352, of 372 U.S. and p. 801 of 83 S.Ct.; see majority opinion, Mr. Justice Clark, Ker v. California, 1963, 374 U.S. 23, 30, 83 S.Ct. 1623, note 7, 10 L.Ed.2d 726, see concurring opinion, Mr. Justice Harlan in the Ker case, p. 44 of 374 U.S. and p. 1646 of 83 S.Ct.

well as what other Justices interpreted the opinion to hold.[20]

We have done this, and conclude: Wolf v. Colorado decided exactly what it said at (4) p. 27 of 338 U.S. and p. 1361 of 69 S.Ct.:

"The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause."

We likewise conclude that the decision referred only to the "security of one's privacy" in connection with a search.

Mr. Justice Frankfurter was careful to preface the holding we have quoted by a discussion wherein he announced firmly the adherence of the Court to the principles of Palko v. Connecticut (302 U.S. 319, 58 S.Ct. 149), restated his oft repeated expression that the "due process of law" guaranteed by the Fourteenth Amendment is not shorthand for the first Eight Amendments and does not thereby incorporate them.

In the next line after the holding we have quoted, Mr. Justice Frankfurter

20. *Before* Wolf v. Colorado: Mr. Justice Frankfurter (concurring opinion), Malinski v. New York, 1945, 324 U.S. 401, 414, 65 S.Ct. 781, 788, 89 L.Ed. 1029; Mr. Justice Frankfurter (concurring opinion), State of Louisiana v. Resweber, 1947, 329 U.S. 459, 469, 67 S.Ct. 374, 378; Mr. Justice Frankfurter (concurring opinion) Adamson v. California, 1947, 332 U.S. 46, 67, 67 S.Ct. 1672, 1683.

*After* Wolf v. Colorado: Mr. Justice Frankfurter (majority opinion), Stefanelli v. Minard, 1951, 342 U.S. 117, 119, 72 S.Ct. 118, 119, 96 L.Ed. 138; Mr. Justice Jackson (majority opinion), Irvine v. People of California, 1953, 347 U.S. 128, 132, 74 S.Ct. 381, 383, 98 L.Ed. 561; Mr. Justice Stewart (majority opinion) Elkins v. United States, 1960, 364 U.S. 206, 213, 80 S.Ct. 1437, 1442, 4 L.Ed.2d 1669.

" * * * But nothing could be of greater relevance to the present inquiry than the underlying constitutional doctrine which Wolf established. For there it was unequivocally determined by a unanimous Court that the Federal Constitution, by virtue of the Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers. 'The security of one's privacy against arbitrary intrusion by the police * * * is * * * implicit "in the concept of ordered liberty" and as such enforceable against the States through the Due Process Clause'. 338 U.S. 25, 27–28 [69 S.Ct. 1359, 1361]. The Court has subsequently found frequent occasion to reiterate this statement from Wolf. See Stefanelli v. Minard, 342 U.S. 117, 119 [72 S.Ct. 118, 119, 96 L.Ed. 138]; Irvine v. People of State of California, 347 U.S. 128, 132 [74 S.Ct. 381, 382, 98 L.Ed. 561]; Frank v. State of Maryland, 359 U.S. 360, 362–363 [79 S.Ct. 804, 807, 3 L.Ed.2d 877]." (Aster-

isks as shown; we note especially that the Court omitted reference to the Fourth Amendment in the above quotation.)

See also, dissenting opinion of Mr. Justice Frankfurter, joined by Mr. Justice Clark, Mr. Justice Harlan and Mr. Justice Whittaker in Rios and Elkins v. United States, 364 U.S. 233, 237–238, 80 S.Ct. 1453, 1456:

" * * * In this use of Wolf the Court disregards not only what precisely was said there, namely, that only what was characterized as the 'core of the Fourth Amendment,' not the Amendment itself, is enforceable against the States, but also the fact that what was said in Wolf was said with reference to the Due Process Clause of the Fourteenth Amendment, and not with reference to the specific guarantees of the Fourth Amendment. * * * "

Mr. Justice Harlan (dissenting opinion) Poe v. Ullman, 1961, 367 U.S. 497, 81 S.Ct. 1752, 1780:

"That aspect of liberty which embraces the concept of the privacy of the home receives explicit Constitutional protection at two places only. These are the Third Amendment, relating to the quartering of soldiers, and the Fourth Amendment, prohibiting unreasonable searches and seizures. While these Amendments reach only the Federal Government, this Court has held in the strongest terms and today again confirms, that the concept of 'privacy' embodied in the Fourth Amendment is part of the 'ordered liberty' assured against state action by the Fourteenth Amendment. See Wolf v. People of State of Colorado, 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782]; Mapp v. Ohio, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 108]."

stated that the "knock at the door", whether by day or night, as a prelude to a search, without authority of the police, was inconsistent with the conception of human rights enshrined in the history and the basic constitutional documents of English-speaking peoples, and needed no commentary of recent history to be condemned as such.

We do not believe that Wolf v. Colorado referred to arrests in its holding, 1, because of the mention of the "knock at the door" as a prelude to search by police without authority, and, 2, because in the Colorado Supreme Court case (Wolf v. People, 117 Colo. 279, 187 P.2d 926) the facts showed that the police went to Wolf's office (he was a physician) without a warrant, arrested him, and then confiscated his medical records which they used to convict him, yet there was no mention of an arrest in the U. S. Supreme Court opinion.

Nor do we believe that Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, could be stretched to fit plaintiff's allegations. The opinion, at page 171 of 365 U.S. and page 476 of 81 S.Ct. placed the petitioners "on solid ground" with the use of one sentence and a citation of Wolf v. Colorado and Elkins v. United States, then devoted most of the discussion to history and "color of law".[21]

Mapp v. Ohio, 1961, 367 U.S. 643, 655–656, 81 S.Ct. 1684, 1687, 1692, stressed the search and said:

" * * * in extending the substantive protections of due process to all constitutionally unreasonable searches—state or federal—it was logically and constitutionally necessary that the exclusion doctrine— an essential part of the right to privacy—be also insisted upon as an essential ingredient of the right newly recognized by the Wolf case. In short, the admission of the new constitutional right by Wolf could not consistently tolerate denial of its most important constitutional privi-lege, namely, the exclusion of the evidence which an accused had been forced to give by reason of the unlawful seizure."

The opinion further stated at pages 656–657 of 367 U.S. and at page 1692 of 81 S.Ct.:

"We find that, as to the Federal Government, the Fourth and Fifth Amendments and, as to the States, the freedom from unconscionable invasions of privacy and the freedom from convictions based upon coerced confessions do enjoy an 'intimate relation' in their perpetuation of 'principles of humanity and civil liberty (secured) * * * only after years of struggle.' Bram v. United States, 1897, 168 U.S. 532, 543–544 [18 S.Ct. 183, 187, 42 L.Ed. 568]. They express 'supplementing phases of the same constitutional purpose— to maintain inviolate large areas of personal privacy.' Feldman v. United States, 1944, 322 U.S. 487, 489–490 [64 S.Ct. 1082, 1083, 88 L.Ed. 1408]. The philosophy of each Amendment and of each freedom is complementary to, although not dependent upon that of the other in its sphere of influence—the very least that together they assure in either sphere is that no man is to be convicted on unconstitutional evidence. * * * *"

It appears to this Court that the language we have quoted indicates Mapp v. Ohio not only did not relate to arrests, but did not depart from the standard used by Wolf to measure due process; that Mapp's purpose was to "close the door" in State courts to evidence obtained in the manner declared by Wolf to violate rights implicit in the concept of ordered liberty.

After careful study we have been unable to find any United States Supreme Court case which decides the question which the Court of Appeals in Cohen v. Norris, supra, (in the note at page 28

---

21. The Elkins case citation referred to page *213* (364 U.S., 80 S.Ct. 1437) and we have quoted from that page of the opinion, in our note 20.

of 300 F.2d) stated it was not required to decide: "whether, as assumed in Agnew, the provisions of the Fourth Amendment forbidding unreasonable arrests and prohibiting issuance of warrants of arrest except on probable cause have been made applicable to the states by reason of the due process clause of the Fourteenth Amendment".[22]

Counsel for defendants have expressed alarm for the result of a holding that simple arrest without warrant where facts fall short of probable cause constitutes a violation of a constitutional right, and have mentioned that thousands of arrests by state and local law enforcement officers are made without warrants every day;[23] that if plaintiff's contentions in this case are correct, all that will be needed to give entree to Federal court is an additional allegation that such arrests are without probable cause.

We do not decide in this opinion, nor have we need to decide, whether the bare allegations defendants mention are sufficient to plead a cause of action within 42 U.S.C.A. § 1983; we suggest that an "entree" into Federal court does not determine the length of stay, and we have already pointed to the necessity of requiring *factual* allegations in a complaint filed under this Section.[24]

We do not believe that we need try to fit the facts of our case into one of the "tidy categories"[25] of a provision of the

22. The note on page 28 gave us no clue, and of course it was not meant to do so.

The bulk of Supreme Court opinions with reference to the Fourth and Fourteenth Amendments have had to do with the exclusion in criminal cases of evidence procured through search and seizure. There has been little litigation about the arrest portion of the Fourth Amendment (unconnected with a search) possibly because an unlawful arrest has been ruled not to deprive the court of jurisdiction to try the defendant. See Frisbie v. Collins, 1952, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 512, 96 L.Ed. 541; Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421; see also Professor Caleb Foote "Safeguards in the Law of Arrest" Northwestern University Law Review, 1957, Vol. 52, 16, 39.

23. See statistics set out in Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, note 6, 4 L.Ed.2d 134; see also California Law Review, Vol. 50, 1962, "Police Practices and the Law" by Edward L. Barrett, p. 32, 35:

"In 1960 police and sheriff's offices reported 98,821 adult felony arrests in California. 28% of all those arrested were released by the police without the filing of any charge in court * * *. In the overwhelming majority of adult felony cases the decision whether or not to make arrests is made by the police. Certainly the participation of courts through the issuance of warrants is so small as to be insignificant statistically, even if one assumes that judges do in fact screen the police decision when issuing warrants."

The impact on law enforcement practices of an extension of the Fourth Amendment provisions as to arrest into the Fourteenth Amendment as "implicit in the concept of ordered liberty" has likewise been considered at a symposium on Law and Police Practice published in the March-April, 1957 (Volume 52) issue of the Northwestern University Law Review.

See also Yale Law Journal Nov. 1960, Vol. 70, p. 1, at p. 13, Mr. Justice Douglas, John Field Sims Memorial Lecture, and Illegal Searches and Seizures, Univ. of Ill. Law Forum, 1961, p. 78, by Professor Yale Kamisar.

24. Hornsby v. Allen, 5 Cir., 1964, 326 F.2d 605, 611, complaint must set forth facts showing denial of constitutional right; United States ex rel. Hoge v. Bolsinger, 3 Cir., 311 F.2d 215; Hoffman v. Halden, 9 Cir., 268 F.2d 280, 294; Selico v. Jackson, D.C., 201 F.Supp. 475, 478; Stiltner v. Rhay, 9 Cir., 1963, 322 F.2d 314, 316, n4; Agnew v. Moody, 9 Cir., 330 F.2d 868.

25. "The effort to imprison due process within tidy categories misconceives its nature and is a futile endeavor to save the judicial function from the pains of judicial judgment." (Dissenting opinion, Mr. Justice Frankfurter, joined by Mr. Justice Burton in Irvine v. People, 1954, 347 U.S. 128, 147, 74 S.Ct. 381, 391).

See also York v. Story, 9 Cir., 1963, 324 F.2d 450, where the Court felt it unnecessary to decide case under Bill of Rights or a portion thereof, and considered cause of action on theory that "security of one's privacy against arbitrary

Bill of Rights. It was said by Chief Justice Warren " 'Due Process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." (Hannah v. Larche, 1960, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307.) And in another case, The Chief Justice remarked: " * * * In my view, the reasons which have compelled the Court to develop the law on a case-by-case approach, to declare legal principles only in the context of specific factual situations, to avoid expounding more than is necessary for the decision of a given case are persuasive." Culombe v. Connecticut, 1961, 367 U.S. 568, 637, 81 S.Ct. 1860, 1897, 6 L.Ed.2d 1037. In Garner v. State of Louisiana, 1961, 368 U.S. 157, 160, 163, 82 S.Ct. 248, 251, 7 L.Ed.2d 207, a like observation was made. Another and similar rule of constitutional construction was enunciated by Mr. Justice Matthews in Liverpool, New York & Philadelphia Steam-Ship Co. v. Commissioners, 1885, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899: "[N]ever to anticipate a question of constitutional law in advance of the necessity of deciding it".

We shall not decide this motion by a reference to the Fourth Amendment. We decline this course for several reasons: 1. There is no necessity to do so. 2. The principles of constitutional law to which we have adverted. 3. If we may paraphrase an observation made in another case by the Circuit Judge who announced the decision in Cohen v. Norris: if a wholly novel doctrine is to be fashioned * * *[26] in this regard, it ought not to be done by this lower court.

We shall now consider the cause of action as stated in the complaint in the light of whether there was a deprivation of rights "implicit in the concept of ordered liberty". Though counsel for plaintiff refer in their brief to "arrests without warrant, without probable cause" we have more, in this complaint: an arrest without a warrant and without probable cause by officers acting under color of law, actuated, not by a desire to enforce the law, but by an ulterior motive and an imprisonment by the officers for the same motive.[27]

In determining what constitutes lack of "due process" we think that "motive" should and does bear heavily in cases under Section 1983, 42 U.S.C.A. where police officers are involved, though specific intent to deprive a person of a specific constitutional right need not be present. For instance, in the following opinions the use of certain language: (Emphasis supplied)

"Wrongdoer" in the definition of color of law, United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, quoted in most Civil Rights cases, under both civil and criminal sections.

Congress meant to give a remedy to one deprived of constitutional rights by an official's *abuse* of his position. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 476, 5 L.Ed.2d 492.

Full and factual allegations of the complaint set out in the opinion showed a *"bad" motive unconnected with law enforcement,* in York v. Story, 9 Cir. 1963, 324 F.2d 450, 455.

"But here it is alleged that appellees had an *unlawful purpose* in exercising force and in conducting a public search." (p. 33) And, "the only *legitimate* purpose of a search is to ascertain whether articles which the officers have a right to seize are on the person or the premises being searched. Any search is unauthorized and so becomes unreasonable in the constitutional sense when it goes be-

intrusion by the police is basic to free society and is therefore "implicit in the concept of ordered liberty", citing Wolf v. Colorado, supra, Mapp. v. Ohio, supra, Frank v. Maryland, supra, Palko v. Conn., supra and other cases.

26. Circuit Judge Hamley in Rios v. United States, 1958, 9 Cir., 256 F.2d 173, 176:

"If a wholly novel doctrine is to be fashioned to tie the hands of federal courts in this regard, it ought not to be done by an intermediate appellate court".

27. That the ulterior motive was punishment for the exercise by plaintiff of the right of free speech we notice, but do not consider.

yond that purpose." (p. 32) Cohen v. Morris, 9 Cir. 1962, 300 F.2d 24.

"No one has a constitutional right to be free from a law officer's *honest misunderstanding of the law.*" Agnew v. City of Compton, 9 Cir.1957, 239 F.2d 226, 231.

"[O]fficials must be protected from tort actions based upon *honest misunderstandings* of statutory authority and *mere errors* of judgment." Selico v. Jackson, D.C.S.D.Cal., 1962, 201 F.Supp. 475, 478.

Maryland v. Heyse, 10 Cir.1963, 315 F.2d 312, 314, there were three arrests of the person, two in one month and one two years later, no warrant, no charges filed; each occasion plaintiff was questioned and detained several hours. Court said it was a jury question whether the *conduct of the police officers on the three occasions was so arbitrary, unreasonable and without probable cause* as to subject the plaintiff to a deprivation of rights guaranteed by the Constitution of the United States. The wording in Monroe v. Pape, mentioning an official's "abuse" of his position was cited.

"Their *'bad' motive* may in some situations become critical." Gager v. Bob Seidel, D.C.Cir.1962, 300 F.2d 727, 732.

The complaint "also stated the purpose was *punishment* due to plaintiff's refusal to incriminate himself * * *." Hardwick v. Hurley, 7 Cir.1961, 289 F.2d 529, 531.

Striker v. Pancher, 6 Cir.1963, 317 F.2d 780, 784 as follows: (action under 42 U.S.C.A. § 1983).

"This statute is aimed at *reprehensible* action on the part of the defendant in the civil action authorized by it. *'Misuse'* of power and *'wrongdoer'* were the terms used by the Court in the Classic case, supra, and repeated in Monroe v. Pape. The cases bear out this view. * * * In Culp, a state officer without cause arrested certain persons for the *purpose of extortion.* * * *"

The case of Nesmith v. Alford, 5 Cir. 1963, 318 F.2d 110, cert. den. 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420, contains some rather general findings, and requires elaboration for our purpose. A white professor and other white people were dining with colored people in a private dining room in Alabama. They were arrested without warrant and without probable cause, and charged with "disorderly conduct". The Court said at page 121 " * * * But liberty is at an end if a police officer may without warrant arrest, not the person threatening violence, but those who are its likely victims *merely because the person arrested is engaging in conduct* which, though peaceful and legally and constitutionally protected, *is deemed offensive and provocative* to settled social customs and practices".

We find the following two cases of special interest. Neither has been overruled or questioned, as far as we can ascertain. In Culp v. United States, 8 Cir. 1942, 131 F.2d 93, at p. 98 the Court said:

"We do not doubt that the immunity of an inhabitant of the United States from a deprivation of life, liberty, or property by state action not amounting to due process of law is an immunity secured and protected by the due process clause of the Fourteenth Amendment. * *

"It is our opinion that a state law enforcement officer who, *under color of state law,* willfully and *without cause, arrests* and imprisons an inhabitant of the United States *for the purpose of extortion,* deprives him of a right, privilege, and immunity secured and protected by the Constitution of the United States * *." [28]

In Brown v. United States, 6 Cir. 1953, 204 F.2d 247 the charge was that Brown and a deputy sheriff conspired to deprive certain persons of rights, privileges and immunities secured to them under the

---

28. Culp v. United States was cited with approval by Mr. Justice Rutledge in his concurring opinion in Screws v. United States, 1945, 325 U.S. 91, 127, 65 S.Ct. 1031, 1048, as dealing with rights protected by the Constitution.

Constitution. The overt acts were arrests by the sheriff and placing the persons in jail until they paid money to the sheriff for Brown. The Court said:

"* * * The United States Constitution protects rights guaranteed by the Fourteenth Amendment. Screws v. United States, 325 U.S. 91, 103–105 [65 S.Ct. 1031, 89 L.Ed. 1495]; Williams v. United States, 341 U.S. 97, 101 [71 S.Ct. 576, 95 L.Ed. 774]. These rights include the right to be tried by a legally constituted court, *the right not to be deprived of liberty without due process and the right not to be arrested by an officer acting arbitrarily without cause and for an ulterior purpose.* Williams v. United States, supra, 341 U.S. at page 101 [71 S.Ct. at page 579]; Wolf v. Colorado, 338 U.S. 25, 27, 28 [69 S.Ct. 1359, 93 L.Ed. 1782]; Catlette v. United States, 4 Cir., 132 F.2d 902, 906."

At page 250 of 204 F.2d, the Court said:

"A state law enforcement officer, *who under color of state law,* willfully and *without cause arrests and imprisons an inhabitant of the United States for the purpose of extortion* deprives him of a right, privilege and immunity secured and protected by the Constitution of the United States and commits an offense defined under 18 U.S.C. Section 242. * * * *" 29

There can be no question that a person is deprived of his liberty when he is arrested, and also when he is imprisoned. (Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042) There is no question that freedom from arrest, freedom from imprisonment, except through due process are rights "implicit in the concept of ordered liberty", and guaranteed by the Fourteenth Amendment against invasion by the State. There is no question that an arrest by State officers without warrant, without probable cause, not with a purpose of enforcing the law, but with an ulterior motive, is an arrest without due process. Imprisonment by said officers pursuant to such arrest is likewise without due process. When acting under "color of law" in accomplishing the deprivations above stated, the officers have accomplished a violation of Section 42 U. S.C.A. § 1983.

The complaint herein sets forth a cause of action under said Section.

Counsel for defendants urge that the doctrine of abstention applies here. The avoidance of the obligation of federal courts to decide cases in which they have jurisdiction can be justified under the doctrine of abstention only in exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. Such is not the case here. Plaintiff can have no action in a State court which is a counterpart of the one before us, for Section 1983 created an entirely new right, federal in origin, and cognizable only in a court of the United States.[30]

---

29. It is, of course, to be noted that the Culp and Brown cases arose under the criminal statute, 18 U.S.C.A. § 242, which, except for the addition of the word "willfully" corresponds to the civil statute, 42 U.S.C.A. § 1983.

30. McNeese v. Board of Education, 1963, 373 U.S. 668, 672, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622; County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163; Marshall v. Sawyer, 9 Cir., 1962, 301 F.2d 639,

645; Jordan v. Hutcheson, 4 Cir., 1963, 323 F.2d 597, 605.

There is also an indication that a holding for plaintiff might result in many cases being filed in Federal Court. Similar apprehension was expressed in Hardwick v. Hurley, 7 Cir., 1961, 289 F.2d 529, 530 as to the decision in Monroe v. Pape. *Note comment in* Cohen v. Norris, supra, 300 F.2d p. 34, and York v. Story, 9 Cir., 1963, 324 F.2d 450, 456. Compare Irvine v. People, 1954, 347 U.S. 128, 152, 74 S.Ct. 381, 393, 98 L.Ed. 561.

We noted in the beginning that we would treat plaintiff's allegations as admitted facts, without so finding, and we have not so found; we rule only that his allegations are sufficient to afford him the opportunity to present evidence.